CATHARINE ANDERSON, impleaded with SAMPSON WOOD, OBADIAH WOOD and LEWIS WOOD, Appellants, v. ELISHA MATHER, Respondent.

The legal title to lands, conveyed (in 1827) to A and his heirs, in trust to pay the rents and profits to B for life, and on her death to convey to the heirs of B, descended to A's heirs, upon his dying (in 1832) before B, notwithstanding the provisions of the Revised Statutes (part 11, chap. 1, title 2, § 68) for the vesting of such trusts in the Court of Chancery; and a conveyance by A's heirs, after the death of B, is a proper execu-tion of the trust. Section 11, title 5, of that chapter, limits the applica-tion of the statute to trusts thereafter created, except for the purpose of converting formal trusts into legal estates.

Nor does the statute (§ 47, art. 11) vest the legal estate in the *cestuis que trust*, for the trust is not merely nominal, but is connected with the power of management and disposition. (§ 48.)

The Court of Chancery had power, both before and since the Revised Sta-tutes, to compel infant trustees to convey, in such manner as the interests of the *cestuis que trust* might demand, and the statutory provision (§ 65, art. 11) forbidding any conveyance in contravention of the trust, is a restriction upon the trustee, and not a limitation of the powers of the court.

Authority for the care and protection of equitable estates of infants is inherent in the court, independently of any statutory provisions; the power conferred by statute relating only to lands of which the infant is seized, and not to equitable interests.

Proceedings having been had in the Court of Chancery during the minority of the appellant (one of the plaintiffs in this action), by which the trust estate was sold and a portion of the proceeds invested in other

HAND—VOL. V.      32

real estate, giving to her the same equitable interest therein as in the lands so sold, the appellant having accepted her proportion of the avails of a partition sale of such lastly acquired lands, after service of the respondent's answer in this action, settling up such sale of the trust estate and investment of proceeds in the lands so partitioned, is estopped from claiming her proportion of the trust estate, as against a purchaser thereof. And this is so, although the appellant is a *feme covert*, since acting as a *feme sole* in the management of her separate estate and the conduct of this action, she is bound by her acts and all lawful inferences to be drawn from them.

(Argued for the appellant and submitted on behalf of the respondent, September 29th; decided December 29th, 1870.)

APPEAL from an order of the Supreme Court at the late General Term in the seventh district, reversing a judgment entered on the report of a referee, and granting a new trial, as to the appellant, Catharine Anderson.

The action was in the nature of ejectment to recover the possession of seventy feet of land fronting on the west side of Washington street, in the city of Rochester, being 167 feet in depth, of which the complaint alleges that the defendant is in the wrongful possession, having ejected the plaintiffs, who claim to be the owners in fee.

The answer denies every statement of the complaint, and, as an affirmative defence, alleges certain facts substantially as found by the referee, and hereinafter stated. The defendant claims, as affirmative relief, that the plaintiffs be required to release and convey all their interests; or, if that be denied, that the plaintiffs be directed to pay him the value of his improvements before being let into possession. The issues were referred to the Hon. H. R. Selden, referee, to hear and decide, who made a report, substantially, of the following facts, viz:

On the 7th day of December, 1827, David Cathcart and Masterton Ure, being seized of the premises in fee, conveyed the same by deed, in consideration of $200, to Ira West, his heirs and assigns, " upon the special trust and confidence, nevertheless, that the said party of the third part (West), shall pay to Judah Wood of Rochester, during her natural

life, the income, rents and profits to arise from the said lot of land; and upon the further special trust and confidence, that, after the death of the said Judah Wood, the said party of the third part, or his heirs, shall grant, release, and convey to the children of the said Judah Wood, her surviving, and to the children of such of her children as may die before the said Judah Wood, the said lot of land and premises in fee simple; the grand-children to take such interest in the said land and premises as the parent would have taken if living."

Ira West, the trustee, died in 1832, leaving a widow, Eliza West, and six minor children, his only heirs-at law. The children of Judah Wood were Sampson Wood, Obadiah C. Wood and Morris Wood. Morris Wood died in 1833, leaving Lewis Wood and Catharine Wood, now Catharine Anderson, his minor children and only heirs-at-law. On the 28th of May, 1835, Judah Wood (having prior to that date intermarried with George Sampson), together with her husband and surviving sons, Sampson and Obadiah, then of full age, and Eliza West, the mother and general guardian of the infant children of Ira West, the deceased trustee, applied to the Court of Chancery, by petition, setting forth the foregoing and other facts for a sale of the premises in question. The petition was presented to the vice-chancellor of the eighth circuit, before whom, on the day last mentioned, an order was made referring it to a master of that court, to ascertain and report as to the truth of the facts alleged in the petition; and particularly whether the premises could be advantageously sold, with benefit to the persons interested, and the reasons of his opinion; to ascertain the value of the premises, and the terms on which they should be sold; and also to report the description and value of any small farm in the county of Monroe, to be purchased as a homestead for the petitioner Judah, and the sufficiency of the title; and whether it would be beneficial to the petitioners that the same be purchased; also whether Judah Sampson and Eliza West were suitable and proper persons to represent the infants on a sale, as proposed in the petition. The master reported that

the facts stated in the petition were true, and recommended a sale of the premises and the investment of the proceeds as prayed in the petition; $1,000 to be invested in the purchase of a house and ten acres of land in the town of Greece, as a homestead for Judah. He also reported that Judah and Eliza were proper persons to be appointed guardians of the infant children respectively in the proceedings. On the coming in of that report, the court appointed Judah a special guardian for her infant grandchildren, Lewis and Catharine Wood, and also appointed Eliza West special guardian for the infant children of Ira West, for the purpose of a sale of the premises, and directed Judah to sell the same, under the direction of the master; that $1,000 of the proceeds and a sum sufficient to pay the costs of the proceedings be paid in cash to the master, and the residue secured by the bond and mortgage of the purchaser upon the premises executed to the clerk of the court; the interest to be paid to Judah Sampson during her life, and at her death the principal to be paid to Sampson and Obadiah C. Wood, one-third each, and the remaining third to the infants, Louis and Catharine Wood, jointly. That $1,000 be invested in the ten acres of land in the town of Greece, the conveyance to be made to Judah Sampson for life, with remainder in fee to Obadiah, Sampson, Lewis and Catharine Wood; to Obadiah and Sampson, one-third each, and to Lewis and Catharine, the remaining one-third, jointly; that the special guardian report in writing to the court, under oath, concerning the premises. She reported to the court, that she had entered into a contract with Joseph Strong, subject to the approbation of the court, to sell to him in fee simple for $1,800, all the right and title of the infants, Lewis and Catharine, and of her sons, and of herself, in the premises, to be paid in the manner above mentioned. That she had contracted to purchase the ten acres described by the master for $1,000, to be conveyed as mentioned in the order. On the 9th of July, 1835, an order was made by the court confirming the report and sale, and directing Eliza West, as guardian of the infant trustees, to execute a deed of the pre-

mises to Joseph Strong, upon receiving the consideration therefor; and that $1,000 thereof be paid to the master to purchase the ten acres, and that the balance, after the payment of costs, be secured by bond and mortgage as mentioned in the order. On the same day Strong paid and secured the $1,800 according to the contract, which was the full value of the premises; and Eliza West, as guardian for the infant trustees, and in their names, executed and delivered to him a deed of conveyance, to him, his heirs and assigns, in fee of the premises. Strong immediately entered into the possession of the premises, and he and his grantees have ever since continued in possession thereof. That the defendant, prior to the death of Judah Sampson, purchased in good faith, and paid the full value of the premises, without actual notice that the plaintiffs, or either of them had, or claimed any interest therein, and the title acquired by Strong became vested in him, and he has ever since been in the possession and use of the premises. That after such purchase, and before receiving notice of any adverse claim, the defendant erected a valuable dwelling-house and other buildings, of the value of over $6,000.

Judah Sampson died in 1852, leaving the plaintiffs her only lineal descendants, and her heirs-at-law. It appears from the petition, that Lewis and Catharine were, respectively, of the age of eleven and nine years, at the time the petition was presented in May, 1835.

The sum of $1,000 paid by Strong on his purchase in 1835, was immediately applied in payment for the house and ten acres of land in Greece, which were conveyed to Judah Sampson for life, with remainder in fee to her children and grandchildren in the proportions mentioned in the order of the Court of Chancery, and she occupied these premises from the time of such purchase until her decease, December 23d, 1852. Since the death of Judah Sampson the ten acres have been sold in pursuance of an order of the Supreme Court, in a suit commenced in that court by Lewis Wood and his wife, against Sampson Wood, Obadiah C. Wood, Catharine Ander-

son and her husband, and Adolphus Bangs, to obtain a partition thereof. Of the proceeds of such sale Lewis Wood has received one-sixth, Catharine Anderson and her husband, one-sixth, and the other two-thirds have been received by Sampson and Obadiah C. Wood, and Bangs, according to their respective rights and interests.

The referee reports that Sampson and Obadiah C. Woods knew the source from which the title to the ten acres was obtained, and the manner in which it was paid for, but that it does not appear that Lewis Wood, or Catharine Anderson, or her husband, had any notice or information to that effect.

Judah Sampson received the interest on the bond and mortgage during her lifetime; and after her decease, and in May, 1853, Sampson Wood, claiming to be the administrator of the estate of Judah Sampson, and guardian for the infant children named in the bond and mortgage, presented a petition and obtained an order *ex parte* directing the payment of the principal of the bond and mortgage to him, and it was paid to him on the 25th of May, 1853, amounting to $789.13. This order was afterward revoked on the application of Lewis Wood as to him; but it does not appear what became of the money after it was paid to Sampson Wood. Obadiah C. and Sampson Wood have frequently been at Rochester since the conveyance to the defendant. Lewis Wood has resided some years at Chicago, and Catharine Anderson has always resided in Rochester. It has been a subject of conversation among the children and grandchildren of Judah Wood from before the time of the purchase by the defendant, that they had some claim to the premises.

While this action was pending Lewis Wood stipulated in writing, entitled in the action, that the entire legal and equitable title to the premises was in the defendant, and that he was then the lawful owner.

The referee found, as conclusions of law, that the sale to Joseph Strong was void as against the infants, Lewis and Catharine Wood (now Catharine Anderson), and gave Strong

no title; that Obadiah C. Wood, Sampson Wood and Lewis
Wood are estopped from disputing the title of the defendant,
Mather; that on the death of Judah Sampson the trust created
by the deed to Ira West became merely nominal, and an undi-
vided sixth part of the premises then vested and still remain
in Catharine Anderson, who is entitled to the possession
thereof; that Catharine is not estopped by the facts appearing
in the case from asserting her title; that the defendant is enti-
tled to judgment for costs against the plaintiffs, Obadiah C.,
Sampson and Lewis Wood; that Catharine Anderson is enti-
tled to judgment for one undivided sixth part of the premises
with costs.

Judgment was entered according to this report on the 9th
of April, 1861.   The defendant excepted to the report of the
referee as follows, viz.:

1st. That Catharine Anderson is entitled to judgment.

2d. To the conclusion that she is not estopped by the facts.

3d. To the conclusion that the trust became merely nomi-
nal on the death of Judah Sampson, and that an undivided
sixth then vested and remains in Catharine Anderson, who is
entitled to possession thereof.

4th. To the conclusion that the sale to Strong was void
against the infants, Lewis and Catharine Wood, and gave
Strong no title.

5th. To the fact as found, that it does not appear that
Lewis Wood or Catharine Anderson, or her husband, knew
upon receiving their portion of the proceeds of the sale of the
ten acres in Greece, from what source the title of the said ten
acres was obtained, and the manner in which it was paid for,
or had notice or information to that effect.

6th. Because the report does not find for the defendant
against all the plaintiffs.

The plaintiffs, other than Catharine Anderson, also excepted
to the report, and appealed to the General Term.   The
defendant also appealed to the General Term from the portion
of the judgment against him.

The General Term affirmed that part of the judgment in

favor of the defendant, and reversed that part of it in favor of Catharine Anderson against the defendant; and ordered a new trial as to her, costs to abide the event.

Catharine Anderson appealed to the Court of Appeals from the order affecting the judgment in her favor, stipulating that if the order should be affirmed judgment absolute be entered. The case at General Term is reported 38 Barb., 473.

*Homer H. Woodward,* for the appellant, argued among other things, that no title descended to the infant children of Ira West upon·his death in 1832. (1 R. S., pp. 727, 729, 730, §§ 47, 61, 68; *Hawley* v. *Ross,* 7 Paige, 103; *Glen* v. *Gibson,* 9 Barb., 638; *Janrocey* v.·*Rutherford,* 9 Paige, 273; *Frazer* v. *Western,* 1 Barb. Ch., 220; *Dominick* v. *Sayre,* 3 Sandf., 555; *Hoey* v. *Kenney,* 25 Barb., 396; *Bunn* v. *Vaughn,* 3 Keyes, 345.) On the death of Judah Sampson it vested in the surviving *cestuis que trust,* without conveyance. (1 R. S., pp. 727, 729, §§ 47, 59; Willard's Eq. Juris., 419; 9 Paige, 107, 523; *Jackson* v. *Dunsbaugh,* 1 Johns, Cas., 91.) The·trust estate vested in the court, on the death of Ira West. (9 Barb.; 7 Paige, and 9 Paige, *supra; Johnson* v. *Fleet,* 14 Wend., 176; *Nicoll* v. *Walworth,* 4 Den., 385; *Welch* v. *Allen,* 21 Wend., 147.) The sale to Strong was void, as against the appellant. (*Cruger* v. *Jones,* 18 Barb., 467; *Rogers* v. *Dill,* 6 Hill, 416; *In re Turner,* 10 Barb., 552; *Wood* v. *Wood,* 5 Paige, 596; *Dyrard* v. *Clason,* 11 Paige, 136; *Wright* v. *Miller,* 8 N. Y., 10·; *Foreman* v. *Marsh,* 1 Kern., 551; 4 N. Y., 266, 557; 34 Barb., 106; *Cochrane* v. *Van Sarlay* 20 Wend., 365; 11 Vesey, 604; 5 id., 102; 4 Sim., 430; *Brewster* v. *Striker,* 1 Comst., 19; *Schneider* v. *McFarland,* 2 Comst., 459; *Noyes* v. *Blakeman,* 2 Seld., 567; *Baker* v. *Lorrillard,* 4 Comst., 257; *Johnson* v. *Fleet, supra.*) And defendant has no better position than Strong. (*Ring* v. *Steele,* 3 Keyes, 450.) Appellant is not estopped, being an infant at time of sale. (*Brown* v. *McCune,* 5 Sandf., 225; *Ackley* v. *Dygart,* 32 Barb., 176.) And under coverture since before she became of age. (*Dominick*

v. *Sayre,* 4 Sandf., 374 and 473; Coke Litt, 352; Cro. Eliz.,
39, 700; 3 Paige, 470; Com. Dig., Estop. C., 2; *Jackson* v.
*Vanderheyden,* 17 John., 167; *Curtis* v. *Pollett,* 15 Barb.,
337.) Having done nothing by which the defendant was
induced to change his position. (1 Cow. & Hill's Notes, 200;
*Lawrence* v. *Brown,* 1 Seld., 394; 8 Watt's & Serg., 135;
5 id., 284.) Appellant has not ratified the sale. (Coke Litt.,
2, 416, title Confirmation; *Hoyle* v. *Stowle,* 2 Dev. & Battle.,
320; *Baylis* v. *Donely,* 3 M. & Selw., 477; *Tucker* v. *More-
land,* 12 Peters, 68; *Austin* v. *Pattin,* 11 Serg. & Rawle.,
311; 19 Wend., 301.)

*Elisha Mather,* respondent in person, insisted with other
points, that the Revised Statutes did not have the effect of
passing the legal estate to the beneficiaries. (36 Barb., 38;
2 Comst., 297; 1 Barb., 424; 4 Sandf., 1; 5 Barb., 438; 2
Hill, 574.) The court, in 1835, had power to order a sale of
the equitable interest of the appellant, then an infant. (20
Wend., 375; Johns. Ch., 163; 3 id., 370; 2 Kent Com., 229,
3d ed; 2 Story Eq., § 1357; 3 Desaus., 18, 22; 4 Sandf., 1;
2 Molloy, 393.) The contract of sale made by the special
guardian, and confirmed by the court, transferred appellant's
equitable title without the necessity of a deed. (4 Kent's
Com., 303–4, 4th ed.; Lewin on Trusts, 498.) And so of
payment, possession, and improvements by the purchaser.
(4 Comst., 404; 2 Story Eq., § 759.) The receipt of her
share of the avails from the partition sale, with notice, is
ratification by the appellant. (1 Story Eq., § 385; 6 Indiana
R., 289; 16 Barb., 613; Act of 1849, Ch. 375.)

LEONARD, C. The legal estate in the land was vested in
Ira West, and his heirs and assigns by the deed of 1827. It
is claimed by the appellant that the Revised Statutes of 1830,
upon the death of the trustee, divested his heirs of the legal
estate, and vested it in the (then) Court of Chancery, and
made it the duty of the chancellor to appoint some person to
execute the trust. (Section 68, p. 730, vol. 1.) The first

chapter of the second part of the Revised Statutes of 1830, which includes the section referred to, made sweeping changes in the law relating to trusts as previously existing. The last section of title five of that chapter (§ 11) restrains and limits its operation, so that it shall not be construed to alter or impair any vested estate, interest or right, except as to the conversion of formal trusts into legal estates; nor so as to alter or affect the construction of any deed, etc., which shall have previously taken effect. This is not a formal, but an active trust, to manage land, collect the rents and pay them to Judah Wood during her life. At her death the duty of passing the legal title, may have been formal. It could not be dispensed with, however, without altering the vested title of the estate in, and the construction of the deed to West and his heirs. The construction urged by the appellant would wholly divest the heirs of the trustees, who are described in the deed, and alter and impair the legal effect previously given thereto by law. This construction of the statutes above given is further confirmed, as I conceive, by the plain language of sections 47 and 48, of the second article of title two of chapter one, part two. (R. S., vol. 1, p. 727, §§ 47, 48.)

Section 47 provides that every person who by grant, assignment or devise, now is, or hereafter shall be, entitled to the actual possession of lands, and the receipt of the rents and profits thereof, in law or in equity, shall be deemed to have a legal estate therein, of the same quality and duration, and subject to the same conditions, as his beneficial interest. The next section (48) declares that the last preceding section (47) shall not divest the estate of any trustees in any existing trust where the title of such trustees is not merely nominal, but is connected with some power of actual disposition or management in relation to the lands which are the subject of the trust. The latter section indicates that it was not the intention of the statutes to convert an active trust previously existing, in which the trustee had the management of the land, and the receipt and payment of the rents and income, into a

legal estate in the hands of the *cestuis que trust.* In the present case the trustee is also clothed with the power of final disposition, by a conveyance to the children and grandchildren. Nor had these children or grandchildren any right of possession of the land or of the receipt of the rents during the life of Judah Wood. It appears, therefore, entirely clear that this trust was not affected by the Revised Statutes, and the interests of the children and grandchildren, as well as those of Judah Wood, remained equitable, and not legal estates in the land, after the revision of 1830, as before.

When this trust was created in 1827 the Court of Chancery was empowered by statute to compel infants seized or possessed of land in trust for others to convey to any other person in such manner as the court directed. (1 R. L., 148, § 7.) The Revised Statutes continued the same power. (2 R. S., 194, § 167.)

There is no provision in the trust deed forbidding a disposition of the land, or restraining the authority of that court under the statute last mentioned. The right of Judah Wood, then Judah Sampson by marriage with George Sampson, to petition with her husband and her adult children for leave to sell, and the power of the Court of Chancery upon such petition to direct the sale and conveyance by the infant trustees of the land in such manner as the adult petitioners demanded and the discretion of the court should deem advantageous, cannot, in my opinion, be questioned.

The sale and conveyance bound the adult petitioners. It has been so adjudged by the Supreme Court, and those persons have not brought any appeal, and the question as to them is not before this court. The question here relates solely to the sale of the equitable estate of Catharine Wood, an infant (now Catharine Anderson), in 1835. She was then a minor of the age of nine years. The sale purported to convey her interests, as well as those of the adult petitioners. The grandmother, Judah Sampson, was appointed guardian of her infant grandchildren, Lewis and Catharine, in the proceedings for the sale before the Court of Chancery. The same

facts which made it important for the adult parties to obtain
a sale of the premises and a change of the investment proved
it to be equally necessary and advantageous for the infants.
The fences and two small frame dwelling-houses on the pre-
mises were falling to decay, and the whole rents amounted
only to $150 annually, a sum too small to keep the property
in repair and afford any surplus toward the support of the
grandmother during her life. Her support for life was the
first object of the trust, and the land was purchased with
"her hard earnings," as appears from the report of the mas-
ter, who approved the sale. Judah Sampson, the guardian,
was directed by the order to contract for the sale of the pre-
mises, subject to the approbation of the court. She obtained
the full value, and the court approved the sale, and directed
the infant trustees, in whom the title was vested, to convey
by their guardian, who had been appointed for that purpose.
The receipt and investment of the proceeds of the sale was
confided to the master, an officer of the court, and most care-
fully did he perform his duty, so that the change of invest-
ment was made without the loss of a dollar. The power
exercised by the Court of Chancery as to the sale of the
estates of infants of an equitable nature, is inherent, and not
derived from statutory authority. The power conferred by
statute relates to lands of which an infant is seized, and not
to his equitable estates. (2 R. S., 194, 195, §§ 170 and 175.)

One of the powers inherent in the Court of Chancery is
the protection of infants and their estates. The authority to
sell the estates of infants, of an equitable character, inde-
pendently of any statutory power, has been exercised by the
Court of Chancery in several instances in this State. We are
referred to cases fully sustaining our position. (*Cochrane* v.
*Van Surlay*, 20 Wend., 375; *Pitcher* v. *Carter*, 4 Sandf.
Ch. R., 1.)

The statute respecting the sale of infants' estates, above
referred to, has no reference to lands held by infant trustees,
and the provision declaring void every sale and conveyance in
contravention of the trust expressed in the instrument, by

which the trust was created (1 R. S., 730, § 65), it is believed has reference to the unauthorized acts of trustees, and does not divest the court of its power over the legal estates of infant trustees, so expressly conferred by the section of the Revised Statutes before referred to.　(2 R. S., 194, § 167.)

The trust premises having been sold for their full value, were conveyed by deed, executed on the part of the infant trustees by their guardian, to Joseph Strong.　The legal title became thereby vested in him; and the order of the court for the sale, the receipt and investment of the consideration paid, carried the equitable title or estate of those beneficially interested, including the infants as well as the adults.　It was but a change of the investment, made for the benefit of all who were interested in the estate, in the future as well as the present.　The exercise of the power in question has been long in use, has been advantageous, and ought not now to be doubted.

There are further considerations favorably affecting the case for the defendant.　He derived his title by conveyance from Joseph Strong.　He has been in possession, and has expended large sums in the improvement of the land.　Since this action has been pending, the appellant has received her share of the investment of a portion of the proceeds of the sale to Strong. The land purchased in the town of Greece was sold in partition, by a suit for that purpose, to which all the children and grandchildren of Judah Sampson were parties, who, on her death, became vested with the title in fee.　The appellant obtained her share in 1856.　This action was commenced in 1854, and the answer of the defendant, setting up all the facts in regard to the sale of the trust estate and the investment of the proceeds in the land in the town of Greece, and on bond and mortgage, was served in November of the same year.　The date of the commencement of the action and the service of the answer appear, from the appellant's statement, appended to the case.　She is chargeable with knowledge of the facts stated in the defendants' answer.　She was of full age, for it appears she was of the age of nine, in 1835,

when the proceedings were had in chancery for the sale, which resulted in the conveyance to Joseph Strong. She was then about twenty-nine years of age, when she received her share of the said money. This money was her separate estate. It is urged that she was then a *feme covert,* and not. estopped for that reason by her own acts.

She prosecutes her action and her appeal in this case by virtue of the law conferring new rights on married women for the management of their separate estates.. As a *feme sole,* she is in like manner subject to an action as a single woman, as to her separate estate. New rights and new duties have been conferred by law upon married women, as to the control and management of their separate estates. It will not do to hold that married women are not bound by their acts, and by the just inferences from them, while acting as single women in the management and control of their separate property. In my opinion, the appellant is bound by all lawful inferences to be drawn from her action in receiving her share of the proceeds on. the partition sale· of the lands in the town of Greece. She knew from whence the money was derived for the acquisition. of that land, and that the title had been taken in the name of her grandmother, for life, with remainders in fee to her children and grandchildren, of whom she was one. These facts were all set forth in the defendants answer in this action, served on her attorney two years before she received the money. She is chargeable with knowledge of the facts so stated. It is true, the referee finds in his report, that it does not appear that she had any information in this respect, but in his opinion he states, that he has little doubt that she had this knowledge. He must have overlooked the answer of the defendant, and the date of its service. We are entitled to look into the recorded facts of the case, which cannot be varied by any evidence. Neither Strong, who paid the money, nor the defendant, his assignee, can maintain any action to recover this money from the appellant. If she prevails, she gets both the land which produced the fund, invested in the town of Greece, and the money so invested; or at least her sixth of

Statement of case.

both. In my opinion, the claim of a sixth of the money from the land in Greece, estops her in this action, in the same manner as if she were a single woman.

There is still a further consideration against the right of the appellant to maintain this action. We have already held that the fee in the land was vested, on the death of the trustee named in the deed, in his heirs. If the sale and conveyance to Joseph Strong under the order of the court, has not been operative for any cause the legal title now remains in the said heirs. This action on the part of the plaintiffs is a claim of the legal title in themselves. If they had proceeded upon their equitable title, they should have joined the heirs of Ira West, and have asked for equitable relief. As the plaintiffs have not the legal title, they cannot maintain their action to recover possession.

I cannot conclude my examination of this case, without an acknowledgment of the very valuable assistance which I have received from the opinion of Mr. Justice JAMES C. SMITH, delivered when this case was before the Supreme Court, at General Term, to which I now refer as an authority here.

I am of the opinion, that the order appealed from should be affirmed, and judgment absolute be entered against the plaintiff according to her stipulation, with costs.

GRAY, C., did not vote. Order affirmed with costs, and judgment absolute in favor of the defendant, with costs.