[Civ. No. 5044. Third Appellate District.—February 14, 1934.]

SECURITY–FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), Plaintiff and Respondent, v. EPHRAIM B. EASTER et al., Defendants and Appellants; CATHERINE RUPELL, etc., Defendant and Respondent.

Craig & Weller and Frank C. Weller for Appellants.

Gibson, Dunn & Crutcher and E. H. Conley for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

THOMPSON, J.—Certain beneficiaries of a trust estate created by means of a final decree of distribution pursuant to the terms of a will have appealed from a judgment rendered in an equitable action directing the sale of real property contrary to the express prohibition of the trust. The question which is involved in this appeal is whether a court of equity may direct a sale of real property and authorize a reinvestment of the proceeds therefrom contrary to the express terms of a trust, in the absence of consent thereto by the beneficiaries, and without satisfactory proof of the failure of the trust and reasonable assurance of a profitable sale and reinvestment of the proceeds thereof.

Alfred Easter died testate. He was possessed of real property situated in Los Angeles, including a group of houses known as Catalina Court, of the approximate value of $85,000. The deceased left surviving him his widow, Catherine Easter, now Catherine Rupell, and the appellants who are his children by a former wife and his grandchildren. His will was admitted to probate and a final decree of distribution of his estate was entered October

3, 1923, from which no appeal was taken. This decree, pursuant to the terms of the will, distributed Catalina Court, together with other real property, to the plaintiff in trust for the benefit of the widow and the children of the deceased. With relation thereto, the decree contains the following provisions:

"Said trustee shall possess, manage, control, sell, convey, lease, rent, assign, transfer and invest and reinvest the proceeds of any property sold, or any substitute therefor, as to it may seem best, . . . upon the following conditions, to-wit: That Catherine Easter, surviving widow of said deceased, shall have the use, rent free, of one of the units of the property known as Catalina Court, so long as she may desire to occupy the same. . . .

"*During the lifetime of the said Catherine Easter, notwithstanding the power of sale hereinbefore given, the said trustee shall not sell the property known as Catalina Court, located on Catalina Street in the City of Los Angeles, . . . or in any manner dispose of said properties.* . . .

"Out of the net income arising from the properties held in trust by said trustee, it shall pay unto the said Catherine Easter, the sum of $300.00 per month for and during the term of her natural life, and the balance of the net income, if any, shall be paid by said trustee in the proportion of one-third thereof to Ephraim B. Easter, son of said deceased, for and during the term of his natural life, and the other two-thirds shall be paid by said trustee in equal shares unto Kate B. Gherky, Elizabeth B. Marriott and Martha B. Todd, daughters of said deceased. . . .

"Upon the death of the said Catherine Easter, the trust hereinbefore referred to shall terminate and all of the property in the hands of the trustee or in its possession or control, shall go to and vest in the heirs at law of the said Alfred Easter, deceased, in accordance with the statute of succession of the State of California."

For a period of time the widow occupied one of the apartments in Catalina Court and was regularly paid the monthly sum specified in the decree. She subsequently remarried. The financial depression so reduced the income from the property in question that the trustee was unable to regularly make the payments in full to the beneficiaries as required by the will and decree. This suit in equity

was then commenced to procure a judgment directing the sale of Catalina Court. The complaint asserts the creation of the trust by means of the decree of distribution pursuant to the terms of the will, the depreciation of the value of the property and the inability of the trustee to pay the monthly installments from the income thereof as provided by the trust. It also alleges that a sale and reinvestment of the proceeds thereof will enable the trustee to fulfill the requirements of the trust. The answer of the appellants, who are all of mature age, and who represent all of the heirs at law of the deceased and all of the beneficiaries of the trust, except the widow, denies the material allegations of the complaint, and sets up the terms of the trust prohibiting the sale of the property during the lifetime of the widow. It also sets up the final decree of distribution as an estoppel, alleging that the plaintiff and the widow are bound thereby. The court found that the trust was created as above related by the rendering of the decree of distribution, from which no appeal was taken; that the value of the property had depreciated to such an extent that there was not sufficient income therefrom with which to pay the widow and the other beneficiaries the sum specified by the trust; that the Catalina Court property, consisting of ten units, was in need of repairs; "that the remaining property of said estate does not provide sufficient income to carry out the purposes of said trust or to provide any appreciable income for the beneficiaries thereof; . . . that the proceeds from the sale of said property, when reinvested, will provide sufficient income to carry out the purposes of said trust; that unless said property is sold and the proceeds therefrom reinvested, the trustee cannot carry out said purposes". The court thereupon rendered judgment directing the sale of the property "for the best price obtainable", and authorized the reinvestment of the proceeds thereof. From this judgment all beneficiaries except the widow have appealed.

Section 1021 of the Probate Code, which provides that "such order or decree, when it becomes final, is conclusive as to the rights of heirs, devisees and legatees", does not divest a court of equity of its jurisdiction to afford a remedy for an erroneous distribution of property or to construe a declaration of trust when it appears the decree

of distribution was procured by fraud or mistake, or when it is sought to modify the decree by consent of all the interested parties. (*Estate of Walker,* 160 Cal. 547 [117 Pac. 510, 36 L. R. A. (N. S.) 89]; *Fletcher* v. *Los Angeles Trust & Savings Bank,* 182 Cal. 177 [187 Pac. 425]; *Bacon* v. *Bacon,* 150 Cal. 477 [89 Pac. 317, 321]; *Whittingham* v. *California Trust Co.,* 214 Cal. 128 [4 Pac. (2d) 142]; 10 Cal. Jur. 486, sec. 28.) In the case of *Bacon* v. *Bacon, supra,* it is said: ''We conclude that the provisions of section 1666 (Code Civ. Proc.—now sec. 1021 of the Probate Code) do not prevent a review of a decree of distribution by a suit in equity, in a proper case.''

In the present case, the judgment of the court of equity authorizing the sale of real estate is in direct violation of the express terms of the trust, which provide that ''during the lifetime of the said Catherine Easter, notwithstanding the power of sale hereinbefore given, the said trustee shall not sell the property known as Catalina Court, . . . or in any manner dispose of said properties''. Ordinarily a court of equity has no power to direct the sale of real estate in contravention of the explicit terms of a trust created by will or deed. (65 C. J. 730, sec. 594; 2 Perry on Trusts, 7th ed., p. 1306, sec. 764.) Section 870 of the Civil Code provides that, ''Where a trust in relation to real property is expressed in the instrument creating the estate every transfer or other act of the trustees, in contravention of the trust, is absolutely void.'' In the case of *Anderson* v. *Mather,* 44 N. Y. 249, it was held that a statute similar to section 870 of our Civil Code merely prescribes a restriction upon the powers of trustees, and that it is not a limitation upon the jurisdiction of a court of equity in a proper case. There is reputable authority holding that a court of equity may authorize the sale of real property contrary to the express terms of a trust when all the interested parties have consented thereto, when unforeseen events threaten to totally destroy the value of the trust property and when the chief purpose of the trust has failed through the exigency of changed conditions, but which may be carried out or substantially improved and the interested parties benefited by such sale. (65 C. J. 746, sec. 612; *Young* v. *Young,* 255 Mich. 173 [237 N. W. 535, 77 A. L. R. 963, and note at p. 971]; *Johns* v. *Johns,* 172 Ill. 472 [50

N. E. 337] ; *Upham* v. *Plankinton,* 166 Wis. 271 [165 N. W. 18] ; *Mann* v. *Mann.* 122 Me. 468 [120 Atl. 541] ; *Weakley* v. *Barrow,* 137 Tenn. 224 [192 S. W. 927].) In the Young case, *supra,* the trust property consisted of a valuable hotel in Grand Rapids which was insured for $50,000. It was totally destroyed as the result of a fire. The annual taxes against the property were $3,000. The insurance money was grossly inadequate to reconstruct the building. The purpose of the trust was practically destroyed by the burning of the hotel. All income therefrom ceased. The taxes would eventually consume the value of the lot. The estate was offered $125,000 for the land. All of the beneficiaries, devisees, legatees and heirs who were interested in the property were made party defendants in the suit. Thirty-one of these defendants consented to the order of sale. The court said: ''Not a single defendant objected to the sale.'' Under such circumstances it was held a court of equity had the authority to direct the sale of the property notwithstanding the express prohibition of the trust. Under somewhat similar circumstances, in the case of *Johns* v. *Johns, supra,* a court of equity first refused to order the property sold, but upon a rehearing said: ''The facts here present the alternative of modifying the trust agreement or else losing the entire trust estate.'' Upon such a showing the property was ordered to be sold. In the case of *Mann* v. *Mann, supra,* it appears the property was ordered to be sold pursuant to a special statute of the state of Maine, empowering a court of equity to authorize a sale of property contrary to the express terms of a trust. In the case of *Upham* v. *Plankinton, supra,* the trust property became entirely unproductive and was rapidly deteriorating. The maintenance and repair of the property cost over $4,000 a year. It produced no income. The entire purpose of the trust was thereby defeated. Upon that showing the property was ordered to be sold. In the case of *Weakley* v. *Barrow, supra,* where the sale of property was restricted by the terms of a trust embodied in a deed, it was held that a court of equity had the power to authorize the sale of real property contrary to the terms of the trust ''when, by reason of some exigency arising from unforeseen and unanticipated circumstances, the property held in trust will fail to answer the primary purposes of the trust''.

The court then adds that while "it is entirely proper to look to that paramount purpose when the court comes to determine the implied intent of the settlor . . . it cannot be allowed to override and render nugatory the intention to restrict the power of sale as vested in his wife; that is to say 'the *corpus* shall remain unimpaired' ".

It has always been the settled policy of the law to respect and enforce the solemn explicit declarations of the wishes of a testator which are embodied in the terms of his last will. The Supreme Court of the United States says in *Shelton* v. *King*, 229 U. S. 90 [33 Sup. Ct. 686, 690, 57 L. Ed. 1086] : "There is no higher duty which rests upon a court than to carry out the intentions of a testator when the provision is not repugnant to settled principles of public policy, and is otherwise valid." ■■ While it is undoubtedly true that a court of equity has the power under proper circumstances to direct the sale of property contrary to the express terms of a trust for the purpose of saving the estate from serious loss or destruction, on the theory that it is helping to fulfill the ultimate purpose of the trust, such an order may not be made as a mere matter of expediency, or even because the sale may be deemed to be beneficial to the parties interested. In view of the seriousness of interfering with the express declarations of an express trust prohibiting the alienation of property for a limited time, a court of equity should not order the property to be sold except upon clear and satisfactory proof that it is necessary to do so to preserve the estate and carry out the intention and purpose of the testator. A court has no right to speculate upon the mere probability that such a sale will ultimately inure to the benefit of the beneficiaries. In the present unsettled financial condition of affairs it is generally conceded that all investments are highly speculative. Real estate may now ordinarily be sold only at a ruinous sacrifice. It is a perplexing problem to determine what investments may be fairly safe or reasonably profitable. This illustrates the fact that greater care should be exercised under such circumstances to determine the necessity for a sale of real property when it conflicts with the express terms of a trust. Certainly before real estate is ordered to be sold contrary to the terms of an express trust and the proceeds therefrom are directed to be re-

invested, the court should require some showing of the possibility of a sale for a reasonable price and of the nature and security of the proposed investment.

 In the present case ·it does appear that the income from the property in question has decreased on account of the present financial depression approximately forty per cent since the creation of the trust in 1923; that the income is now barely sufficient with which to pay the taxes, repairs and maintenance of the property, and that for several years the trustee has been unable to pay to the beneficiaries any substantial sums upon the declaration of trust. Still it appears that most of the property is constantly occupied at a decreased monthly rental which practically pays the expense of maintaining the property at the present time. There was no showing that the trustee would be able to secure a reasonable price or any sum whatever for the property in the event of a sale. There was absolutely no attempt to show in what character or value of property the trustee proposed to reinvest the proceeds of sale.

Mr. Sherman Grail, an officer of the plaintiff trustee, testified that there was no present sale for the property at any price whatever. He said in that regard: ''Q. What do you think this property would sell for at the present time? A. I seriously doubt if it is salable at the present time. Q. In other words, you would almost have to give it away to dispose of it at the present time? A. I think so, yes. The Court: No market value? A. I wouldn't go so far as to say no market value. As a matter of fact, we haven't endeavored to sell it for some time. My general opinion is it would be extremely difficult to get anything in the present market.''

The record contains no evidence to the contrary. It therefore appears without conflict that there is no present market for the property at any price. It seems like a radical departure from the meticulous rule justifying a court of equity in interfering with the explicit provisions of an express trust to give the trustee *carte blanche* authority to sell real property and reinvest the proceeds therefrom without any assurance that a reasonable price can be procured for the property and without any showing as to the nature or security of the proposed reinvestment. We are of the opinion an order of a court of equity to sell real

property and reinvest the proceeds thereof contrary to the terms of an express trust under such circumstances is unauthorized.

Assuming, without so deciding, that the facts of this case would otherwise authorize a court of equity to make an order to sell the real property in question and reinvest the proceeds, it does affirmatively appear there is no present market value for the property. It does not appear the trustee can procure a reasonable value, or any value whatever, for the property. There is absolutely no showing regarding the character or security of the property in which the trustee proposes to reinvest the proceeds in the event of a sale. The finding ''that the proceeds of the sale of said property, when reinvested, will provide sufficient income to carry out the purposes of said trust'' is not supported by the evidence.

The judgment is therefore reversed.

Pullen, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 16, 1934, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 13, 1934.