Argued November 20; affirmed December 3, 1935

# SCHRAMM *v.* UNITED STATES NATIONAL BANK OF PORTLAND ET AL.

(52 P. (2) 181)

*Custer E. Ross,* of Salem, for appellant.

*A. D. Platt,* of Portland (Platt, Platt, Smith & Black, of Portland, on the brief), for respondent.

BEAN, J. Judge George G. Bingham made his will in 1921, and in October, 1924, he died. Soon thereafter his will was admitted to probate in the county court of Marion county, Oregon.

Judge Bingham left surviving him his widow, Willie Harris Bingham, and his daughter, Alice Bingham Powell. Mrs. Powell and her husband, Keith Powell, then had, and now have, two children, being the defendants George Bingham Powell and Robert Walker

Powell. Mrs. Bingham died shortly after the death of Judge Bingham. All other beneficiaries named in the will are living.

Among other provisions, Judge Bingham's will contains the following:

"Fourth: The rest, residue and remainder of my property, of every nature, kind and description wherever situated, I give, devise and bequeath to Keith Powell to be held by him in trust for the following purposes:—

(1) To pay the net income from my property from all sources to my wife, Willie Harris Bingham, during her natural life; payments to be made monthly in such sums so that at the end of each year the entire net income of my estate shall be paid to her and should the net income be insufficient for her comfortable maintenance and support, then there shall be paid to her such a part of the principal as shall be necessary to supply all her wants in a comfortable and proper manner.

(2) At the death of my wife, Willie Harris Bingham, the net income of my estate is to be paid to my daughter Alice Bingham Powell during the period of her natural life; and should the net income not be sufficient for her needs, then such sum in addition thereto as may be necessary for her comfortable maintenance; the net income to her to be paid in monthly instalments so that at the end of every year she will receive the entire net income.

(3) The trust hereby created is to continue for twenty years from the date of my death, when the same shall terminate and my estate be divided in the manner hereinafter designated. At the death of my daughter, Alice Bingham Powell, provided my daughter shall live for the period of twenty years after my death, then my estate shall be distributed as hereinafter provided, but should she die within twenty years from my death, then what remains of my estate shall be kept intact until the period of twenty years shall expire; the net income to be paid to my grandchildren George Bingham Powell and Robert Walker Powell and any

other grandchild that may be born to my daughter, Alice Bingham Powell in equal proportions during the twenty-year period, it being my intention that the net income of my estate shall be first paid to my wife, during her lifetime and at her death the net income to be paid to my daughter during her lifetime, and if she should survive me for the period of twenty years or more then she shall have the net income for the period of her life, but should she die before the expiration of twenty years, then the net income to be paid to my grandchildren, my estate to remain intact until the twenty years shall expire. At the expiration of twenty years from my death should my daughter be alive, she shall continue to have the net income of my estate and at her death after the expiration of twenty years, my estate is to be divided equally between my grandsons, George Bingham Powell and Robert Walker Powell, and any other grandchild or children that may hereafter be born to my daughter and I hereby give, devise and bequeath the same to them.

Fifth: I nominate, constitute and appoint Keith Powell to be executor of this my last will and testament and trustee of my estate, he to act as such without the necessity of giving bonds or other security for the faithful performance of his trust, either as executor or trustee of my estate, giving and granting to my said executor and trustee the right to sell and dispose of any of the real estate which I may own, at any time, without the necessity of procuring an order or license from the County Court of Marion County, Oregon, or any other Court, and to invest and reinvest my estate in such manner as he may see fit, subject only to the limitation that my bank stock in the United States National Bank of Portland, Oregon and in the Bank of Woodburn, shall not at any time be sold or disposed of until the same is finally distributed to my grandchildren, but all other property other than my bank stock may be sold, invested and reinvested as my Executor and Trustee shall deem best.''

At the time of his death Judge Bingham owned 290 shares of the capital stock of the Bank of Wood-

burn, 210 shares of the stock in said bank being owned by others. Judge Bingham's interest in the Bank of Woodburn was appraised, in 1924, at the value of $43,500. Judge Bingham also owned 171 shares (old issue) of the capital stock of the United States National Bank of Portland, Oregon, appraised at $51,300, and 43 shares of the capital stock of the First National Bank of Woodburn, appraised at $4,945. He was also the owner of a considerable amount of other property.

Following Judge Bingham's death, Keith Powell, his son-in-law, was elected president of the Bank of Woodburn and continued to be its president until that bank closed its doors August 7, 1933. Powell was also, at the same time, elected president of the First National Bank of Woodburn and continued in that capacity until about February 1, 1932, when the First National Bank was consolidated with the Bank of Woodburn.

On completion of the administration of Judge Bingham's estate, which was done within the statutory time, all the residue of the property of that estate, including the stocks in the three banks, was turned over to Mr. Powell, as trustee. Subsequent to Judge Bingham's death, his stock in the United States National Bank of Portland was called in, and there were issued in lieu thereof new certificates for 855 shares of the capital stock of the United States National Bank.

Times continued good and the two banks at Woodburn continued to prosper through the year 1929. Beginning, however, early in 1930 the effects of the economic depression became apparent and the values of the bonds held by these two Woodburn banks began to depreciate. In December, 1930, the bond depreciation was substantially $18,000, which operated to entirely wipe out the surplus of the Bank of Woodburn and to impair its capital to the extent of substantially $10,000.

The superintendent of banks required that this capital impairment be made good or that the bank be closed. Mr. Powell, trustee under Judge Bingham's will, on the advice of his attorney that he had a right to do so, borrowed from the Bank of Woodburn the sum of $10,000 to make good this bond depreciation and put in the bank his note signed by himself, as trustee, for that amount and deposited with the Bank of Woodburn 400 shares of the capital stock of the United States National Bank of Portland as security for the payment of that note. Soon thereafter Powell borrowed, as trustee, $2,000 from the First National Bank of Woodburn, and a like arrangement was made with reference to securing the payment thereof. When the two banks were consolidated, this $2,000 note passed to and became the property of the Bank of Woodburn. These notes were renewed from time to time, and at the time that the Bank of Woodburn was closed on August 7, 1933, it was the holder of notes of Keith Powell, trustee, to the amount of $11,350, the payment of which notes was secured by pledge of said stock of the United States National Bank of Portland.

Subsequent to the time of closing of the Bank of Woodburn, the superintendent of banks levied assessments on the stock of the Bank of Woodburn owned by the Bingham Trust to the amount of $3,200, and levied assessments on stock held by Alice Powell, as trustee for George Bingham Powell, in the sum of $100; Alice Powell, as trustee for Robert Walker Powell, $100; Alice Bingham Powell and Keith Powell, $3,000.

On or about February 1, 1933, an arrangement and contract was attempted to be made between Keith Powell, trustee, and the Powells individually, on the one part, and plaintiff on the other part, in compromise

and settlement of all obligations, by the terms of which the $11,350 note made by Powell, as trustee, to the Bank of Woodburn and the stock assessment, against the stock of the Bingham Trust was cancelled and the title and ownership of the 400 shares of the capital stock of the United States National Bank was transferred to plaintiff. In satisfaction of the other obligations above referred to, held by said bank against the Powells individually, there was transferred to plaintiff, as superintendent of banks, the bank deposits of Keith Powell, George Bingham Powell and Robert Walker Powell and the home of Keith Powell and Alice Powell, together with the adjacent house and lot at Woodburn, Oregon. In average times this individual property transferred would have the fair value of $8,000 to $10,000, exclusive of a first mortgage then and now on said town property.

Subsequent to the time of the transfer and delivery of the 400 shares of bank stock to him, plaintiff Schramm presented same to the officials of the United States National Bank of Portland, and demanded that it be transferred to him on the books of said bank. The United States National Bank refused to make the transfer, and this suit was brought to compel the same. Keith Powell, trustee under the last will and testament of George G. Bingham, deceased, and Alice Bingham Powell defaulted. Summons was duly served on George Bingham Powell and Robert Walker Powell and they, having failed to make application within the statutory time for an appointment of a guardian ad litem, such application was made by plaintiff, and thereafter the court appointed Keith Powell, the father of said minors, as their guardian ad litem. Afterward Powell, as such guardian ad litem, filed in this proceeding his answer, admitting the allegations of the amended com-

plaint and consenting that a decree be entered as therein prayed for. The United States National Bank filed its answer, which challenges the right of Powell, under the will of Judge Bingham, to make a sale of the stock under any condition whatever. The case was tried and a decision made in favor of the United States National Bank.

The Bank of Woodburn survived until the presidential bank holidays, but it failed to reopen, and on August 7, 1933, was taken over by the superintendent of banks for the purpose of liquidation. After the Bank of Woodburn had been closed and passed into the hands of the superintendent of banks for liquidation, the plaintiff secured from the circuit court of Marion county an ex parte order purporting to transfer the 400 shares of the United States National Bank stock to the plaintiff in satisfaction of the $11,350 notes and an assessment in the amount of $3,200 levied by plaintiff against the Bank of Woodburn stock held by the trust. The order also involved individual obligations and property of the Powell family.

The trust created by the will of Judge Bingham included not only the Bank of Woodburn stock and the United States National Bank stock but other assets in a very substantial amount. The will gave Mr. Powell, as trustee, the right to sell and dispose of these other assets without the necessity of procuring an order or license from the county court, and to invest and reinvest the same in such manner as he might see fit.

In regard to the Bank of Woodburn and United States National Bank stock, the will made a very sharp distinction. Instead of granting these broad powers of disposal it provided ''that my bank stock in the United States National Bank of Portland, Oregon, and

in the Bank of Woodburn, shall not at any time be sold or disposed of until the same is finally distributed to my grandchildren''.

The 290 shares of Bank of Woodburn stock owned by the trust amounted to 58 percent of all its stock; 42 per cent was owned by others, including Mr. Powell as an individual. The trust holdings in the First National Bank of Woodburn stock amounted to about 17 per cent of the stock of that institution.

It is the position of plaintiff that the course taken by Powell, the trustee, in pledging the stock of the United States National Bank involved in this litigation, operated to prevent the bank from being closed in 1930, and that had the Bank of Woodburn been closed at that time the value of the stock of the Bank of Woodburn, appraised at $43,500, would have been entirely obliterated and the trust estate thereby would have been damaged in that amount, and had there been an opportunity to have presented this matter to a court of equity it would have allowed Powell to pledge the stock, and that, although no such presentation was made, a court of equity still has power to confirm that which it originally could have authorized.

■ The will of Judge Bingham contains a positive interdiction against the sale, or other disposition, of the United States National Bank stock. This interdiction is so clearly expressed that it admits of no construction. There is no conceivable ambiguity in the language of the will. Judge Bingham was a man of unusual legal and business ability and there can be no doubt that the words he chose expressed the intention he wished them to express. This court has uniformly held in line with other courts that where the words of a will are clear there is no room for construction.

In *Stubbs v. Abel,* 114 Or. 610, 622 (233 P. 852, 236 P. 505), this court said:

"This will contains no ambiguity as to beneficiaries or as to things bequeathed or devised; and we shall not resort to surrounding circumstances for the purpose of importing into the will an intention not therein expressed."

In *Re Johnson's Estate,* 100 Or. 142, 157 (196 P. 385, 1115), we find:

"A will cannot be construed by a mere conjecture as to the intention of the testator; but it is the intention which the testator expresses in his will that controls, * * *"

■ Courts of equity have power, under some circumstances, to authorize the sale of trust property, the sale of which is prohibited by the trust instrument. Such power is limited to cases of exigency, where the sale is absolutely necessary to prevent loss or great depreciation of the property to be disposed of. Such sale or disposition can be decreed only where it will be for the benefit of the beneficiaries. The attempted pledge involved in the present case did not benefit the beneficiaries of Judge Bingham's trust: *Lee v. Albro,* 91 Or. 211 (178 P. 784); Annotation 77 A. L. R. 971; *Security-First Nat. Bank of Los Angeles v. Easter,* 136 Cal. App. 691 (29 P. (2d) 422).

The pledge in question was beyond the authority of the trustee since the trust instrument prohibits not merely the sale but the disposition of the United States National Bank stock. The power that exists in courts of equity to set aside positive restraint on alienation is a narrow one seldom exercised and should be exercised only with great caution. As stated by the editorial writer in 77 A. L. R. 971, the power exists "When exigencies arise which leave, as the only alternative

to a sale, the impoverishment of the beneficiaries for whom it was meant to provide and the diminution or total loss of the corpus of a valuable estate, * * *." Cases where this doctrine has been discussed are collected in a note to *Young v. Young,* 255 Mich. 173 (237 N. W. 535, 77 A. L. R. 963, at page 971). In each of these cases the exigency existed in connection with the property sought to be sold. In none of them was it sought to sell or encumber a sound asset in order to save or protect some other asset. It would not have been in consonance with equity and good conscience for permission to have been granted to sell the United States National Bank stock at the time the pledge was attempted to be made, had Mr. Powell sought permission of a court of equity. At least it would have been speculative at that time, and, in the end it was disastrous. We do not question the good faith of Mr. Powell in the matter, but we do not think a court of equity should approve the pledging of stock of the United States National Bank to bolster up the weak, crippled Bank of Woodburn. See *Covington v. Covington,* 196 Ky. 667 (245 S. W. 275). Courts have refused to permit trust property to be sold even where the particular property involved was somewhat endangered. See *Security-First Nat. Bank of Los Angeles v. Easter,* supra. It is not appropriate for a court of equity to speculate upon the mere probability that a sale or a pledge of the kind in question will ultimately inure to the benefit of the beneficiaries. While Mr. Powell acted in good faith and believed he was entirely right, yet he was interested in the matter, not alone as trustee but also as the president and one of the principal stockholders of the Bank of Woodburn. The attempted pledge involved was not solely for the benefit of the trust beneficiaries. Only 58 per cent of the

stock of one of the banks was held by the trustee; 42 per cent belonged to others, and the stock in question was pledged as security and in the assistance of such stockholders. The trustee loaned to this bank of doubtful soundness the credit of the stock of a perfectly sound bank, the sale or disposition of which was prohibited.

■ Plaintiff is charged with notice of the terms of the trust under the provisions of Judge Bingham's will and stands before the court in no better or different position than the trustee. Knowledge of the trusteeship places one, dealing with the trustee, on notice of all the terms of the trust: 65 C. J. 992, §§ 919, 920; *First National Bank v. National Broadway Bank,* 156 N. Y. 459 (51 N. E. 398, 42 L. R. A. 139).

■■ Mr. Powell was appointed guardian ad litem for his minor children. The court is not bound by the confession or admission of a guardian ad litem even though the decree of the court, when made, would be binding on the infant: *English v. Savage,* 5 Or. 518; *Savage v. McCorkle,* 17 Or. 42 (21 P. 444). The trust is an active, and not a passive, one; therefore the consent of the guardian ad litem was wholly ineffective. The trust could not be terminated at this time even if all the beneficiaries were *sui juris* and had personally consented: *Lent v. Title & Trust Co.,* 137 Or. 511 (3 P. (2d) 755); *Closset v. Burtchaell,* 112 Or. 585 (230 P. 554). The court will not usually make a decree by consent where infants are concerned, without an inquiry whether it is for their benefit: *Savage v. McCorkle,* supra. In the present case the trial judge did make such an inquiry and the result of it was that he decided to deny the relief prayed for. In *Closset v. Burtchaell,* supra, it is stated:

"But a part of the *cestuis que trust* cannot terminate the trust. * * * Nor can the trust be ter-

minated by consent so long as it remains uncertain who will take under a bequest or devise relating to the final distribution of the trust property.   *   *   *''

■ There is no claim that these grandchildren are destitute, or that the proposed transfer of the stock would help them, if they were. It is not yet known whether there will be other grandchildren or not. It is still uncertain who will take under Judge Bingham's bequest at the final distribution of the property. The attempted disposition of the United States National Bank stock was not authorized by any court and was wholly void. Plaintiff is not entitled to recover anything in this case, with the sole exception of the $3,200 assessment levied against the Bank of Woodburn stock held by the trust, the validity of which, as a charge against the trust property, is conceded.

The decree of the circuit court was just, appropriate and legal, and should be affirmed. It is so ordered.

BAILEY, J., not sitting.