YOUNG *v.* YOUNG.

1. TRUSTS—WHEN COURT OF EQUITY MAY ORDER CHANGE IN HANDLING TRUST PROPERTY.

When unusual exigency arises in regard to method of handling property or *corpus* of trust fund, it is right and duty of court of equity to authorize change.

2. SAME—SALE PROPERLY AUTHORIZED BY COURT TO CONSERVE PROPERTY.

Where building on trust property was destroyed by fire, and insurance was insufficient to replace it with one that would yield fair return on investment, and *corpus* of trust fund was in danger of being depleted, aid of equity court was properly invoked to authorize sale of property, although will creating trust forbade sale.

3. SAME—STATUTES—COMMON-LAW JURISDICTION TO ORDER SALE OF TRUST PROPERTY.

Statute (3 Comp. Laws 1929, §§ 14404–14412) giving remedy to life tenants and trustees in case of land devised without power of sale does not take away general equity jurisdiction under common law to order sale of trust property.

4. SAME—RESALE—DELAY—IRREGULARITY.

Objection to irregularity in ordering resale of trust property by court five years subsequent to previous order disaffirming original sale is without merit, where all parties interested were joined as defendants and given notice, and petition filed showed changes since original sale was ordered, although it would have been better practice to file supplemental bill showing such changes.

5. SAME—FAILURE TO APPOINT GUARDIAN FOR UNBORN HEIRS.

Failure to appoint guardian *ad litem* for unborn heirs is not of sufficient importance to set aside sale of trust property, where court was mindful of interest of all heirs, both born and unborn, and their rights attached to proceeds of sale.

Appeal from Kent; Brown (William B.), J. Submitted June 12, 1931. (Docket No. 147, Calendar No. 35,819.) Decided June 25, 1931.

Bill by Leland N. Young and another, trustees of the estate of Charles F. Young, deceased, against Mary R. Young and others to sell certain property held in trust without power of sale. Petition of plaintiffs to compel Iosco Land Company to pay balance of price bid at sale and accept deed. Decree for plaintiffs. Defendant Iosco Land Company appeals. Appeal dismissed, and cause remanded.

*Travis, Merrick, Johnson & McCobb,* for plaintiffs.

*Bernard J. Onen,* for appellant, Iosco Land Company.

BUTZEL, C. J. Charles F. Young, of Grand Rapids, Michigan, died testate on March 6, 1916, and on the probating of his will, Leland N. Young of Grand Rapids, Michigan, and Cornelius Gerber of Fremont, Michigan, were appointed trustees of the estate. The will provided that the Michigan Trust Company of Grand Rapids should fill any vacancy in the trusteeship. The largest individual asset of the estate consisted of the Livingston Hotel property at the southeast corner of South Division avenue and Fulton street in the business district of Grand Rapids. Under the express provisions of the will, the trustees were directed to hold this particular piece of property intact for a period of 10 years unless the trust were sooner terminated by the death of both of testator's children, plaintiff

Leland N. Young and his sister Mary R. Young, referred to also as Mary Young Chambers; that should either or both of the two children be living at the end of the 10 years, they or their survivor should have a life estate in the property, but they were to hold the property intact, and upon the death of their survivor, it was to go to their issue, or if they had none, then to their legal heirs, in accordance with the laws of the State of Michigan. The life tenants were to receive the income, use, management, and control of the property in every way, with the exception of the power to sell or mortgage it. The hotel building on the property was insured for $50,000, approximately its full insurable value. On April 1, 1924, it was so badly damaged by fire that the trustees were obliged to raze the remaining walls at an expense of $4,540.82. The insurance moneys were insufficient to construct a new hotel or any other building that would yield even a fair return on the value of the land and a new building, if erected. The will forbade the mortgaging of the premises. The taxes and other charges against the property each year amount to over $3,000 a year, while the income, even before the fire, was small, and since then has become almost negligible.

On June 20, 1924, the trustees filed a bill of complaint setting forth the conditions with which they were confronted, and asked that the premises be sold at public auction, by and under the direction of the circuit court commissioner, and that, in the event that the sale be not confirmed, the court order a resale or authorize an approved lease of the premises for a term not exceeding 99 years, or the execution of a mortgage in order to provide funds with which to make improvements commensurate with the value of the land. The trustees further asked

that the proceeds from the sale constitute a trust fund and take the place of the property and be held subject to the orders and control of the court; that they continue to administer the trust fund, so created, until the termination of the 10-year term, when, in accordance with the will, the Michigan Trust Company be appointed successor to Mr. Gerber, who desired to withdraw as a cotrustee at the end of the 10 years. They further asked that the moneys realized from the sale be invested in proper securities, subject to the approval of the court; that they be required to file a proper bond, annual accounts, etc., all to be approved by the court. The record indicates that all of the parties interested in the estate, either as devisees, legatees, heirs, or otherwise, including those who were actual heirs at that time, as well as those who might possibly become heirs, were made parties defendant. Twenty-six of the adult heirs filed consents to the granting of the relief prayed for in the bill; five other adult heirs filed answers, consenting to the relief prayed for, but asking that the proceeds be treated as real estate. A guardian *ad litem* for 22 minor heirs submitted their rights and interests to the protection of the court. Not a single defendant objected to the sale. On December 17, 1924, a decree was rendered, granting the relief prayed for in the bill, and in accordance therewith, the property was duly advertised and offered for sale. It was sold for $100,500, but the same was disaffirmed. It was shown that the city commission of the city of Grand Rapids had instructed the building inspector not to issue any permits for building on the east side of South Division avenue until the question of widening and improving said street was finally determined, and that the uncertainty arising out of these

proceedings acted as a deterrent to prospective bidders. The order disaffirming the sale also contained a provision that the decree of December 17, 1924, be amended so as to provide that the rights of any persons who might thereafter become heirs of testator's children be barred by the sale of the property, but that their rights attach to the proceeds and that in case a mortgage were executed, they be precluded from questioning its validity. On September 7, 1926, an order was entered appointing the Michigan Trust Company successor trustee to Mr. Gerber, and also as one of the parties plaintiff in the instant suit.

On September 26, 1930, Young and the Michigan Trust Company, trustees, filed a petition showing that the widening of Division avenue had been completed; that a full settlement had been made for the 12-foot strip taken from the property. Stating that they believed that an advantageous bid could be obtained for the remainder of the property, they asked that it be put up for sale as provided in the previous order. Thereupon, an order to show cause, returnable on the 9th day of October, 1930, was issued, and in accordance with its terms, a copy was served upon the defendants, or their duly authorized attorneys, either personally or by registered mail sent to the last known address, at least ten days prior to the date of the hearing. On October 9, 1930, an order of sale was made in accordance with the prayer of the petition. After being duly advertised, the property was sold on December 1, 1930, to Iosco Land Company, sole appellant herein, for the sum of $125,000, but upon the condition that it be allowed a reasonable time, not to exceed ten days, within which to examine the title, and thus determine whether it was merchantable, and whether there

were any incumbrances against the property; that if the title were found to be nonmerchantable, the $1,000 paid on account at the sale be returned to appellant and it be released from its bid. On December 3, 1930, an order *nisi* confirming the sale was entered. On February 25, 1931, appellant Iosco Land Company filed a refusal to accept the deed that had been tendered. It claimed that the court could not legally give the trustees the power to sell that they lacked under the will. It further questioned the regularity of the proceedings. Thereupon, Leland N. Young and Michigan Trust Company, as trustees, filed a petition asking that the Iosco Land Company, appellant, be required to complete the purchase of the property and pay the balance of the amount bid. The petition set forth the proceedings in detail. It showed that in addition to the $50,000, the insurance moneys received by them, the trustees, after paying the assessment for street widening, realized the net sum of $41,686.34, through the condemnation proceedings by which South Division avenue was widened and 12 feet taken from the property. It further showed that the income from the property was only $30 a month; that the taxes are very heavy, and that a large annual loss is incurred through the ownership of the property. The court granted this petition, ordering appellant to pay the balance of the purchase price. Plaintiff Leland N. Young and his sister, who are life tenants of the property, also filed a petition asking that they be joined as parties plaintiff and offering to execute quitclaim deeds to the purchaser. The Iosco Land Company has appealed and raised objections that we shall discuss.

The first question presented is whether, when the will directs that the trustees and the life tenants

shall not sell or mortgage property, but shall keep and hold it intact, a court of equity has jurisdiction and power to authorize a sale, when it appears that the building on the property has been destroyed by fire, the proceeds from the insurance are insufficient to rebuild, and the taxes and other charges each year are far in excess of the income. Frequently, through an over-abundance of caution, accompanied by a lack of foresight to provide for contingencies, the testator directs that his hand, though stilled by death, shall continue to conduct and control his property. When untoward and unforeseen conditions and exigencies arise, has a court of equity the inherent power to take into consideration not only what would have been the wishes of the testator, but also what will safeguard the trust fund for the heirs? Under the circumstances presented in this case, may the court decree such changes as common sense and good reason dictate? A long line of cases has established the principle that, when such an unusual exigency arises in regard to the method of handling the property or the *corpus* of the trust fund, it is the right and duty of a court of equity to authorize such changes. *Johns* v. *Montgomery,* 265 Ill. 21 (106 N. E. 497, L. R. A. 1916 B, 1073, Ann. Cas. 1916 A, 996); *Colonial Trust Co.* v. *Brown,* 105 Conn. 261 (135 Atl. 555); *Marsh* v. *Reed,* 184 Ill. 263 (56 N. E. 306); *Stout* v. *Stout,* 192 Ky. 504 (233 S. W. 1057). While the very well-reasoned opinion in the *Matter of Pulitzer,* 139 Misc. 575 (249 N. Y. Supp. 87) (1931), is only that of a lower court, the case has prompted a learned article by Professor Austin W. Scott, in 44 Harvard Law Review, 1025, in which the entire subject of deviation from the terms of a trust is thoroughly discussed, and a long

list of cases supporting the foregoing principle cited.

Attention is called to the case of *Curtiss* v. *Brown,* 29 Ill. 201, 230, an excerpt from which is as follows:

"Exigencies often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, where the aid of the court of chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the trust, and do with the fund what he would have dictated had he anticipated the emergency. * * * From very necessity a power must exist somewhere in the community to grant relief in such cases of absolute necessity, and under our system of jurisprudence, that power is vested in the court of chancery."

This quotation also appears in *City of Detroit* v. *Railway,* 226 Mich. 354, where the principle is set forth that a court of equity has the inherent power to make necessary changes in trust instruments so that anything necessary may be done for the preservation of the trust property and for the protection of the rights of the beneficiaries and for the promotion of their interests.

In the instant case, the testator made provision for his two children and for those who came after them. He owned a valuable hotel building in the heart of the Grand Rapids business district. He undoubtedly wanted to preserve it for the support of his children and their heirs. He tied it up with a restriction that it might not be sold during the lives of his two children, who were to become life tenants after a term of ten years. The trustees first carried $80,000 insurance on the building, but on account of depreciation in value, they reduced the

amount of the insurance to $50,000. This amount they collected after the fire, which totally destroyed the building, occurred. Evidently this contingency testator gave little thought to. As a result, there was an insufficient amount to reconstruct a new hotel or any other building that would yield a fair return on the investment. The will forbade the mortgaging of the premises. The returns from the property were negligible. Under the circumstances, the trustees were powerless to do anything except permit the *corpus* of the trust to be depleted by the payment of taxes and other charges. Were testator's directions strictly adhered to, it not only would have been a direct violation of the testator's intention to preserve the property for the children and their heirs and so afford them an income, but in time it would have resulted in the heirs receiving a diminished amount of what originally had been left them. Under the circumstances, the aid of the court of equity was invoked and the chancellor properly held that a sale might be made.

It is claimed, however, that under 3 Comp. Laws 1929, §§ 14404–14412, the court was ousted of its general jurisdiction in equity. This act was originally Act No. 233, Pub. Acts 1887, which was entitled:

"An act to authorize the sale in certain cases of land devised or bequeathed by will without power of sale."

The title was amended by Act No. 56, Pub. Acts 1909, to read as follows:

"An act to authorize the sale in certain cases of land conveyed by deed, or devised by will, with or without power of sale."

Subsequently, in 1915, it was re-enacted as part of the judicature act in sections 62–70 of chapter 19 thereof, and it was headed:

"Sales of land devised without power of sale."

Section 14412, *supra*, provides as follows:

"Sec. 70. No sale or conveyance of any kind shall be made of any property contrary to any specific provisions in regard thereto contained in the deed of conveyance, or in the will under which the petitioner holds the said property."

A reading of the entire act, however, shows that it was intended merely to give a simple remedy to life tenants and trustees in case of "lands devised without power of sale." It did not intend to take away general equity jurisdiction as provided by common law. In *Bellant* v. *Brown*, 78 Mich. 294, it was held that, unless the new statutory remedy is declared to be exclusive, it does not abrogate the right to proceed at common law for the same grievance. In *McRoberts* v. *Lyon*, 79 Mich. 25, it was held that the statute which allows the assignee of a nonnegotiable demand to bring suit in his own name, does not prevent him from exercising his common-law right to sue in the name of the contracting party.

In *Re Rodgers' Estate*, 192 Mich. 156, it was held that section 12716, 3 Comp. Laws 1915 (now section 14404, 3 Comp. Laws 1929), did not deprive the probate court of its jurisdiction to order a sale of property under the provisions of section 13987, 3 Comp. Laws 1915 (now section 15800, 3 Comp. Laws 1929).

Under 3 Comp. Laws 1929, §§ 14404–14412, a proceeding can only be begun on the petition of those having life estates (section 14404). If the effect of the statute is to deprive equity of its inherent

powers to supervise a trust in which there is no power of sale, the beneficiaries thereunder or remaindermen would be powerless to petition for a sale, no matter how great the need might be in order to avoid ruinous consequences. We believe that section 14412, *supra,* did not oust the court of its general equity jurisdiction for the same reasons as we stated in *Re Rodgers' Estate, supra,* where we said:

"I am unable to see how chapter 300, 4 How. Stat. (2d Ed.) (3 Comp. Laws 1915, § 12716), which permits a life tenant to petition the chancery court for a sale of a life estate, in any way conflicts with or impinges upon the power given to the probate court in section 11287 when the executor petitions. The latter section does not exclude executors who are also life tenants, nor is there any reason why it should be construed to do so. Neither is the property which can be sold by virtue of the statute confined to any particular class, and no valid reason can be given why life estates should be exempted from its provisions. Chapter 300 gives the devisee of a life estate a remedy he does not have where he is not executor of the whole estate, but its language does not limit the devisee of a life estate in all cases to the proceeding in the chancery court. The petitioner in this case does not petition as life tenant, but as the executrix of the estate for all the devisees. That the probate court is given no machinery for the reinvestment of the proceeds is no objection. It may at least grant the prayer for a sale and a distribution of the proceeds.

"In my opinion, the broad power given the probate court by section 11287 to sell in a proper case on petition of the executor is in no wise nor in any degree impaired by the statute which gives the owner of a life estate who is not the executor under the will the privilege of procuring a sale and a distribution in the chancery court."

Further objection is made to the regularity of the proceedings because the order of disaffirmance of the original sale was made on November 24, 1925, and the application for a resale was not made until September 26, 1930, almost five years later. In the interval, Gerber had ceased to be a trustee under the will and the property had passed to Young and his sister as life tenants; also 12 feet had been taken from the property by condemnation proceedings. It is claimed that the original plaintiffs had lost all interest in the subject-matter and that the Michigan Trust Company, as trustee, had no interest in the property. The trust company was the trustee of the moneys collected from the insurance and the condemnation proceedings; it also would become a trustee of the moneys realized by the sale by the order of the court. It had been made a party plaintiff in the proceedings and no objections were made to such order. The order of disaffirmance provided for a resale which was advisedly postponed on account of the condemnation proceedings that were threatened. The order of resale was proper. *Campbell* v. *Rose Street Improvement Co.*, 224 Mich. 56. Young was still a trustee the same as the Michigan Trust Company. He also was a life tenant, and, therefore, a *quasi*-trustee for the remaindermen. No objection was made to his remaining a party plaintiff. If there were a valid objection to the Michigan Trust Company remaining a party plaintiff, at most it would have been a misjoinder of plaintiffs, and under 3 Comp. Laws 1929, § 14021, by order of the court an improper party may be dropped from the proceedings at any stage of the cause as the ends of justice may require. In addition to this, however, both Young and his sister, the life tenants, filed a petition asking that they be allowed to join as parties

plaintiff.   The Iosco Land Company filed an answer
to this petition.   In order to avoid any question, in
confirming the sale, this petition is considered as
granted.   In disposing of all the questions raised
in regard to irregularities, the record discloses that
each and every party interested in the property was
made a party defendant.   We find that their in-
terests were properly protected through the entire
proceedings.   As a matter of fact, almost all of them
consented to the sale, and none of them have filed
any objections whatsoever either in regard to the
shortness of the notices received or to any other of
the other questions raised by appellant.   It is true
it would have been better practice to file a supple-
mental bill, showing the changes that had taken
place.   However, a petition was filed, showing these
changes, and notice was sent to all of the defendants.
While it was only a ten-day notice, and should have
been for a longer period, as some of the defendants
lived a considerable distance from Grand Rapids,
nevertheless so much time has elapsed since the
order of confirmation has been entered and no ob-
jection has been made, that the notice appears to
have been sufficient.

Objection is further made to the fact that no
guardian *ad litem* was appointed for the unborn
heirs.   There was a guardian appointed for all of
the minor heirs.   In the order of December 17, 1924,
disaffirming the sale, a provision was made for those
who might thereafter become heirs by attaching
their rights to the proceeds from the property.
Were the unborn heirs barred from all further right
to the property there might be some force to appel-
lant's objection.   It would have been a better prac-
tice to appoint such guardian.   However, where the
rights of such unborn heirs were the same as those

of the minors for whom a guardian had been appointed, and the purpose of the proceedings was wholly to preserve the property for the heirs, and the record shows that the court was mindful of the interest of all of the heirs, both born and unborn, and their rights attached to the proceeds from the sale instead of to the property which was being depleted, we do not believe that the failure to appoint a guardian for the unborn heirs is of sufficient importance to set aside the sale. The rights of unborn heirs in the property are barred by the order of the court and attach to the proceeds.

For the reasons stated, the appeal is dismissed, and the case remanded to the lower court for the purpose of amending the order confirming the sale in accordance with this opinion and for taking such other action to enforce the decree as may be necessary. Inasmuch as the questions were raised in good faith and in view of what seemed to be irregularities, the appellant had a right to have the case reviewed by this court. No costs will be allowed to either party.

WIEST, CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.