### MICHIGAN TRUST COMPANY *v.* YOUNG.

1. Trusts—Corpus of Judicial Trust—Life Estates.
   The corpus of a judicial trust, declared after hotel on property which testator had ordered held intact for the duration of the lives of his 2 children had burned, stood in lieu of the hotel property with rights in the trust the same as they would have been in the hotel.

References for Points in Headnotes

[1] 33 Am Jur, Life Estates, Remainders and Reversions § 6 *et seq.*
[2] 14 Am Jur, Cotenancy § 20.
[3] 33 Am Jur, Life Estates, Remainders, and Reversions §§ 66, 67.
[4] 33 Am Jur, Life Estates, Remainders, and Reversions § 11.
[6] 33 Am Jur, Life Estates, Remainders, and Reversions § 284 *et seq.*
[7, 8] 16 Am Jur, Descent and Distribution §§ 62, 63.

2. Wills—Life Estates—Tenancy in Common.

Devise of hotel property by testator to his 2 children with direction that it be kept intact during their lives constituted in them life estates as tenants in common as the devise did not expressly declare it to be joint (CL 1948, § 554.44).

3. Tenancy in Common—Life Estate—Vesting of Remainder Upon Death of One Life Tenant.

Upon the death of 1 of 2 life tenants under a testamentary devise to them as tenants in common the remainder to 1/2 of the trust corpus vested in right in his heirs.

4. Wills—Life Estates—Remainders.

Devise of specific property to testator's son and daughter "during their natural lives * * * and at their death it shall descend to their heirs according to the laws of the State of Michigan" is effective to create life estates in the 2 children with remainders over to the mentioned heirs.

5. Same—Intent—Hotel Property—Estates.

Words in devise of hotel property expressive of testator's intent to have his 2 children keep the property intact and not sell it apply to the physical property but in nowise limit the nature or extent of the relative estates created therein.

6. Same—Life Estates—Tenancy in Common—Remainders—Income.

Provision of will that in case of the death of either of testator's children "without issue him or her surviving, then that part of my estate, herein at any time provided" therein should go to the child surviving did not operate to give to the survivor of such children the entire income from the estate in which each had but a life estate as tenant in common with remainders over to their heirs as the remainders were not given to the testator's children but vested in the child's heirs in right at the death of the child.

7. Same—Remainder Directly to Life Tenant's Heirs—Heirs of the Half Blood.

Provision of will that upon the death of testator's 2 children the property should "descend to their heirs according to the laws of the State of Michigan" passed an estate directly to the heirs of such child and the heirs include kindred of the half blood as well as those of the whole blood, the exception as to property which the child as an intestate inherited from one of his ancestors not of the same blood as the heirs of the half blood not being applicable under the circumstances (CL 1948, § 702.84).

8. SAME—REMAINDER DIRECTLY TO LIFE TENANT'S HEIRS—DETERMINATION OF HEIRS—HEIRS OF HALF BLOOD.

> Widow, full sister, half sister on mother's side and children of deceased half brother on mother's side constituted heirs of deceased son of testator, who died without issue and, as such, were entitled to share in remainder of which deceased son had had a life estate and testator's will provided that upon the death of his children it should "descend to their heirs according to the laws of the State of Michigan" (CL 1948, § 702.34).

Appeal from Kent; Verdier (Leonard D.), J. Submitted June 14, 1956. (Docket No. 14, Calendar No. 46,763.) Decided October 1, 1956..

Bill by Michigan Trust Company, trustee of the estate of Charles F. Young, deceased, against Florence M. Young, George A. Field, Mary Young McCune and others for construction of will and determination of parties entitled to the income and corpus of a judicial trust following death of one of life-interest beneficiaries. Decree directing that trust estate be kept intact with payment of income to other life-interest beneficiary, Mary Young McCune. Defendants Florence M. Young and George A. Field appeal. Reversed and decree ordered to enter determining use and possession of remainder to be in appealing defendants and others and determining their respective shares.

*Paul O. Strawhecker (Peter E. Winegar,* of counsel), for defendant appellant Florence M. Young..

*Alexander, Cholette, Buchanan, Perkins & Conklin,* for defendant appellant George A. Field.

*Linsey, Shivel, Phelps & Vander Wal (R. M. Shivel* and *Dale M. Strain,* of counsel), for defendant appellee Mary Young McCune.

Dethmers, C. J.    Charles F. Young died testate in 1916 survived by his only children, Leland N. Young and Mary Young McCune.  Their mother had also had 3 children by a previous marriage.  His will provided, in part:

"9. I give, devise, and bequeath all of my said residuary estate to my son, Leland N. Young, of Grand Rapids, Michigan, and Cornelius Gerber, of Fremont, Michigan, as trustees, however, to have and to hold the same for a period of not more than 10 years as hereinafter provided for the uses and purposes as follows, *viz.*;—

"(a) To care for, manage, and control the whole of said residuary estate during their trusteeship; to bargain, sell, and convert the whole, or any part thereof, except the Livingston Hotel property, so called, located at the southeast corner of South Division avenue and Fulton street, in the city of Grand Rapids, Michigan, into money, and to invest or reinvest the same, or the proceeds thereof, in such real estate, as to said trustees, or their successors, in the exercise of their best judgment, shall seem best, with the same and all of the power and authority I would possess if living.  As to said Livingston Hotel property however, I direct said trustees to keep and hold the same intact during the term of their trusteeship.

"(b) I further will and direct said trustees, or their successors, to pay out and distribute the income from said estate during the term of their trusteeship as follows, *viz.*;—    *   *   *

"11. At the expiration of 10 years after my decease, or sooner if the trusteeship herein created shall terminate in less than 10 years according to the provisions herein contained, said trust shall cease and said estate be closed, and I hereby give, devise, and bequeath all of my said estate in the possession and control of said trustees or their successors at the end of said 10 years or at the termination of their trusteeship and all of my estate not herein otherwise

disposed of to my said son, Leland N. Young and to my said daughter, Mary Young Chambers, share and share alike, absolutely, except said Livingston Hotel property, hereinbefore more particularly referred to. As to said Livingston Hotel property, I give, devise, and bequeath the same to my said son Leland N. Young and my said daughter, Mary Young Chambers during their natural lives without the power to sell or dispose of the same, it being my desire and I hereby direct that said property be kept intact during the lives of my said son and daughter or either of them but that they shall have the income, use, management and control of the same in every way except the power to sell or mortgage the same and at their death it shall descend to their heirs according to the laws of the State of Michigan.

"12. In case of the death of either of my said children leaving no issue him or her surviving, then that part of my estate, herein at any time provided in this my last will and testament for said child, shall go to the one of my said children that survives. * * * In case of the death of both said children without issue, then I will and direct my trustees, or their successors, to dispose of all my estate remaining in their possession without delay, and to distribute the same according to the laws of the State of Michigan, as though I had died intestate."

The will was admitted to probate. The executors completed their duties, the testamentary trustees then took over under paragraph 9 of the will and they managed and controlled the property of the residuary estate for the 10-year period specified therein. In 1924 the Livingston Hotel building was destroyed by fire and the trustees collected $50,000 in insurance. The land on which the hotel had stood became relatively nonproductive and the trustees were unable to pay the taxes and maintenance out of income therefrom. They then filed a bill in chancery praying for an order for the sale of the hotel land. A decree, entered in 1924, authorized such sale

and created a judicial trust for administration of the proceeds and assets of the hotel property after expiration of the 10-year testamentary trust and until the further order of the court. A sale under that decree was disaffirmed. In 1926 the 10-year testamentary trust expired and the trustees thereunder were discharged. The judicial trustees provided for in the 1924 decree thereafter administered the funds derived as insurance proceeds and other assets of the hotel property. In 1927 the city of Grand Rapids took a portion of that property through condemnation proceedings, paying the judicial trustees $48,120.08. In 1930 the judicial trustees filed their petition for an order to show cause why the hotel real estate should not be sold because taxes and maintenance expenses exceeded income. In 1930 the court ordered a sale. In 1931 the property was sold for $125,000. An order requiring payment by purchasers to the judicial trustees of said proceeds provided that the same should stand in lieu of the real estate. All the assets of the judicial trust inventoried at $185,827.58 on July 28, 1953, and now consist of cash and investments in stocks and bonds made by the judicial trustees under authority of the 1924 decree.

Testator's son Leland died in 1953 without issue or surviving parents, but survived by his widow and his full sister Mary and by a half sister and children of a deceased half brother. Mary still lives. Until Leland's death the judicial trustees administered the funds and assets representing the hotel property, and paid the income therefrom equally to Leland and Mary as life tenants. After Leland's death the surviving trustee continued to pay 1/2 of the income to Mary but made no distribution of the half which would have been paid to Leland had he continued to live.

In 1954 the trustee filed a bill naming as defendants all persons interested in the judicial trust and praying for construction of the will and instructions as to disposition of the trust res and income therefrom. After hearing, the trial court held:

"There can be no distribution of the trust res until the death of Mary, the surviving life tenant and that in the meantime and since the death of Leland, the entire income should be paid to Mary until her death. In view of the fact that there can be no distribution of any part of the trust res until the death of Mary, there is no occasion at the present time to determine who should be the distributees 'according to the laws of Michigan as though [the testator] had died intestate.'"

Decree entered accordingly. Those claiming to be Leland's heirs according to the laws of the State of Michigan appealed.

The controversy is between Leland's surviving widow and heirs on the one hand and his surviving full sister Mary on the other. The ultimate question is whether the corpus of the judicial trust should remain intact during the life of Mary as surviving life tenant with the income therefrom to be paid to her for life, or whether the remainder after Leland's life estate in 1/2 the corpus vested in right and possession at his death in his heirs, entitling them to present distribution thereof together with the income therefrom since his death. In answer to that question the trial court construed the will as follows:

"It appears to me that the will itself answers all of the questions presented. In the first place it appears to be conceded by all of the interested parties that the testator gave to each, his son and daughter, a life estate of 1/2 in the Livingston Hotel, or now in the substituted securities which are to be treated the same as if they were real estate; that Leland's

life estate terminated on his death, and that the remainder is an estate in fee simple.

"In the next place, the testator provided in paragraph 11 of the will that 'said property be kept intact during the lives of my said son and daughter or *either of them.'*

"This answers the question as to whether Leland's share should be distributed upon his death. To do so before the death of his sister Mary would contravene the express direction in his will and would amount to substituting the order of the court for the words in the will. In his will the testator made provision for what should be done upon the happening of several contingencies. The contingency that has happened is the death of Leland without issue. Paragraph 12 of the will says: 'In case of the death of *either* of my said children, leaving no issue him or her surviving, then that part of my estate, *herein at any time provided* in this my last will and testament for said child, *shall go to the one of my said children* that survives.' To me, that clearly means that the entire income from the trust is to be paid to Mary Y. McCune from the time of Leland's death to the time of her death.

"To me this is a typical case for applying the doctrine of a cross remainder of the income to the surviving life tenant. Not only are all of the elements of a cross remainder present, but it is also true that the entire will indicates a desire of the testator to provide solely for his children and grandchildren, if any, to the exclusion of any remaindermen or collateral heirs until such time as there were no children or grandchildren to be benefited."

The trial court held and all parties agree that under the 1924 decree of the court, considered on appeal here in *Young* v. *Young,* 255 Mich 173 (77 ALR 963), the corpus of the judicial trust stands in lieu of the hotel property, with rights in the former the same as they would have been in the latter, and that Leland and Mary were vested with life estates in

the hotel property under the last sentence of paragraph 11 of the will. While the court did not pass on the question, the parties agree that Leland and Mary held such life estates as tenants in common under CL 1948, § 554.44 (Stat Ann § 26.44) because the devise did not expressly declare it to be joint. *Downing* v. *Birney,* 112 Mich 474. They also agree that the remainder after Leland's death in 1/2 of the trust corpus vested in right in his heirs at his death. Disagreement between them goes to whether such remainder also vested in them in use and possession at his death or whether that was postponed until death of the surviving life tenant Mary.

The court held that after Leland's death Mary became entitled to the whole income of the corpus of the judicial trust for the rest of her life under the rule of implied cross remainders. Contending to that same effect Mary cites numerous authorities, including none from Michigan, on the subject of implied cross remainders, and urges that the requisite elements for application thereof are the following: (1) devise of concurrent life estates to 2 or more persons as tenants in common; (2) remainder over after death of life tenants; and (3) an express or implied intent of the testator, expressed in the will, that the use and enjoyment of the remainder be postponed until the death of the last surviving life tenant. In support of her contention that testator's will expresses an intent that the remainder over should vest in use and enjoyment only after death of both life tenants, she points to the language in paragraph 11 of the will reading: "it being my desire and I hereby direct that said property be kept intact during the lives of my said son and daughter or either of them."

She reasons that the expressed desire that the hotel property be kept intact during the lives of Leland

or Mary, or either of them, amounts to a direction
that use of the remainder in 1/2 the corpus of the
trust estate by heirs of the first life tenant to die is
to be deferred until death of the second life tenant.
We do not so read it. The words "I give, devise, and
bequeath * * * to * * * Leland * * * and
* * * Mary * * * during their natural lives
* * * and at their death it shall descend to their
heirs according to the laws of the State of Michigan,"
are effective in themselves to create life estates in
Leland and Mary with remainders over to the men-
tioned heirs. It is evident from the will's language,
both in section (a) of paragraph 9 and in paragraph
11, that the testator used the words "keep intact"
as expressive of the converse of selling, and that it
was thus employed to emphasize to the trustees in
paragraph 9 and to the life tenants in paragraph 11
that they were not to sell the hotel property but, in-
stead, to keep it intact. The words apply to the
physical property and direct what is to be done with
it, but in nowise limit the nature or extent of the
relative estates created therein. Possibly the testa-
tor believed that retention of the hotel property
would best insure an adequate income for the life
tenants and a competence to be left for the remain-
dermen, and wished to avoid the risk that those ob-
jectives might be impaired by sale of the hotel and
reinvestment of the proceeds in other real estate as
permitted under paragraph 9 of the will with respect
to the rest of his estate. The language is expressive
of that purpose rather than of a desire to postpone
use and enjoyment of a remainder already vested
in right in the heirs of one of the life tenants. Had
the testator desired such postponement he could ex-
pressly have provided therefor in few and plain
words. That he did not do.

The trial court held and Mary urges that the lan-
guage in the will's paragraph 12 that in case of the

death of either of testator's children without issue, the part of the estate provided in the will for such child shall go to the surviving child, constitutes a direction that on Leland's death without issue the income which he had been receiving during his lifetime from the corpus of the judicial trust should after his death continue to be paid to the surviving child Mary. The difficulty with that theory is that Leland had only a life estate, which terminated at his death, and not the remainder. The remainder over after Leland's death or the income therefrom is not a part of the estate provided in the will for Leland. Hence, the mentioned provision could not cause to go to the surviving life tenant that which was never provided in the will for Leland, namely, the remainder or income therefrom. Illuminating in this connection is the later provision in paragraph 12 that if both children should die without issue, then testator's trustees were to dispose of all of his estate and distribute it according to the laws of the State of Michigan as though testator had died intestate. This clearly refers to an eventuality to occur during the 10-year testamentary trust period, inasmuch as that is the only period during which there were to be trustees insofar as the will is concerned, and it is persuasive that paragraph 12 was not intended to apply to eventualities occurring thereafter, if, as here happened, testator's 2 children survived that 10-year period. This view is further supported by the fact that under paragraph 12 if Leland and Mary died without issue the estate was to go to testator's heirs-at-law, while under paragraph 11 it is provided that, after the 10-year trust period had expired and Leland and Mary became life tenants, the remainder at their death was not to go to testator's heirs but to the heirs of Leland and Mary.

We conclude that testator did not, by the language of his will, express an intent that at Leland's death

the income from the half of the property held by Leland as life tenant should go to Mary for the rest of. her life but that, on the contrary, testator's intention was that Leland's heirs, determined as of the date of his death, were to have the use and possession of the remainder which then vested in right in them.

There remains the question whether Leland's heirs of the half blood share equally with those of the whole blood. Mary answers in the negative and says that therefore, under CL 1948, § 702.80 (Stat Ann § 27.3178[150]), Leland's widow Florence and his full sister Mary share equally the remainder over after Leland's life estate in half of the trust corpus. Her reliance is placed on CL 1948, § 702.84 (Stat Ann § 27.3178[154]) which reads:

"The degrees of kindred shall be computed according to the rules of the civil law; and kindred of the half blood shall inherit equally with those of the whole blood in the same degree, unless the inheritance come to the intestate by descent, devise, or gift of some one of his ancestors, in which case, all those who are not of the blood of such ancestor shall be excluded from such inheritance."

She relies, also, on *Lyon* v. *Crego*, 187 Mich 625; and *In re Wortmann's Estate*, 210 Mich 541. In both of those cases the intestate had inherited property from one of his ancestors. The question presented was whether intestate's kindred of the half blood who were not of the blood of that ancestor shared in that property with those of the whole blood. This Court held them excluded under the statute. The instant case is distinguishable in that the remainder to be shared by Leland's heirs never belonged to Leland himself as an inheritance from his ancestor. Here the remainder goes to Leland's heirs by virtue of the direction in his father's will, and the question is simply who are the heirs therein specified. By

statute Leland's heirs include kindred of the half blood as well as those of the whole blood, except in the single instance when the property involved, to be inherited by his heirs from an intestate Leland, is property which he in turn inherited from one of his ancestors. That is not the case here. Applicable here is *In re Wagar's Estate,* 302 Mich 243, leading to the conclusion that Leland's heirs according to the laws of the State of Michigan who are entitled to share in the remainder in 1/2 of the corpus of the judicial trust in which Leland had a life estate are his widow Florence, his full sister Mary, his half sister Jeane Field Derby, and the children of his deceased half brother H. George Field.

Decree below reversed and set aside. A decree may enter here in accord with this opinion, with costs to appellants.

SHARPE, SMITH, EDWARDS, BOYLES, KELLY, CARR, and BLACK, JJ., concurred.