HAWAIIAN TRUST COMPANY, LIMITED, A HAWAIIAN CORPORATION, TRUSTEE UNDER THE WILL OF JOHN EMORY BREAULT, DECEASED *v.* CARRIE VILLIESSE BREAULT; KISHINO ODA; HARRY BUSCHER, A MINOR; WARD BUSCHER, A MINOR; MATT WHAN; CAROLE ACKERMAN, A MINOR; DOUGLAS ACKERMAN, JR.; DIANA EWING, A MINOR; PORTIA ACKERMAN; MARY O'BRIEN; KIOKA FUJIKAWA; SHARON MARIE GROOM, A MINOR; HOWARD J. GROOM, A MINOR; SHEILA MARGARET GROOM, A MINOR; AND FRANCES ANN KRATTLIE.

No. 3076.

SUBMITTED NOVEMBER 1, 1957.　　　　　DECIDED JANUARY 15, 1958.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY STAINBACK, J.

This is an appeal to this court from a decision and decree of the court of the first circuit entered on December 8, 1955, upon a bill for instructions as to the meaning of certain provisions of the will of John Emory Breault, deceased.

Hawaiian Trust Company, Limited, the sole remaining trustee under the will of John Emory Breault, deceased, filed a bill for instructions in the court of the first circuit asking instructions (1) whether the trustee could sell certain real estate forming practically the sole remaining corpus of the trust estate and (2) in the event a sale should be held authorized, what disposition should be made of the proceeds of the sale: whether the specified monthly payments to the life beneficiaries should continue to be made and, if so, whether the principal as well as the inadequate income should be used for that purpose.

The will provided:

"(a) My Trustees shall pay, using the income therefor to the extent thereof, the sum of TWO HUNDRED DOLLARS ($200.00) per month to, or use and apply the same for the benefit and account of my mother, *CARRIE VILLIESSE BREAULT*, for and during her lifetime, and, in addition, shall pay, for the benefit and account of my said mother, all medical, sickness and hospital expenses, and her funeral expenses;

"(b) My Trustees shall pay, using the income therefor to the extent thereof, the sum of ONE HUNDRED FIFTY DOLLARS ($150.00) per month to, or use and apply the same for the benefit and account of said *KISHINO ODA*, for and during her lifetime, and, in addition, shall pay, for the benefit and account of said

*KISHINO ODA,* all medical, sickness and hospital expenses;

"(c) My Trustees shall not, during the lifetime of my said mother or of said *KISHINO ODA,* sell or otherwise dispose of my residence, but the same shall be kept intact, together with all furniture, furnishings and equipment, in good order and repair, for the use of my said mother, *CARRIE VILLIESSE BREAULT,* and for my said maid, *KISHINO ODA,* during their respective lifetimes, without charge to them or either of them, and my Trustees shall pay all taxes, insurance, costs of repairs and replacements, and all other charges and expenses of maintenance of said residence with all furniture, furnishings and equipment therein."

The trust is to terminate upon the death of the survivor of the two life beneficiaries and at that time the residence, furniture, etc., are to be sold and the entire trust property is to be distributed to certain named beneficiaries.

The testimony given in the court below showed that the funds held by the trustee had been exhausted and the only substantial asset remaining in the trust was the residence which the testator had directed to be retained as a home for his mother and the maid. Evidence was also presented which showed that the home was in need of substantial repair and that due to its location it is subject to flooding during heavy rains and the erection of a retaining wall at heavy expense would be necessary to protect it from further damage by the rains; that the trust estate has no funds with which to make the necessary repairs and protect the property from further destruction. Also, it appeared from the evidence that neither the mother nor the maid occupied the home since August 1955; that the mother, who at the time of the filing of the petition herein was of the age of 87 years, due to her advanced age and blindness, had need for special care; that after having

been in a local home for aged individuals, she had moved to California and was in a home there; that she was both blind and non compos mentis. The mother died on November 20, 1956, and Willard H. Buscher was appointed temporary administrator of her estate and substituted in place of Carrie Villiesse Breault, deceased.

The chancellor decided: (1) that the sale of the residence was necessary to preserve the corpus and that, therefore, the trustee could sell the residence, provided the right to live therein was waived in writing by the two life beneficiaries; and (2) that the net proceeds of the sale should be held by the trustee as principal, without power on the part of the trustee to invade the principal to make the monthly payments or other payments provided in the will for the life beneficiaries, but that only income from the investment of these proceeds was to be used for such payments.

There is no question but that the lower court had the right to authorize the sale of the residence notwithstanding the expressed term in the will to the contrary, and this, without requiring any written waiver of such right of the beneficiaries to use the residence for life.

There are many cases in which conditions and circumstances arise which a settlor could not have foreseen and it is desirable and wise to free the trust from the directions which the settlor has made in his effort to continue his control. Chancery has evolved the doctrine that it has power and a duty under certain circumstances to authorize a modification of or deviation from the terms of the trust. (54 Am. Jur., *Trusts,* § 284, pp. 224, 225.)

Where certain emergencies occur or unusual circumstances arise not anticipated by the settlor in order to carry out the ultimate purpose of the settlor and to preserve or prevent destruction of the trust estate, the chancellor may order a deviation from the terms thereof. For

example, the present case is an excellent illustration of the necessity to deviate from the prohibition of the sale as the property is deteriorating rapidly, needs extensive repairs for which the trustee has no funds, and is not being used for residence purposes, as provided. The property must be sold to preserve the intent of the trust.

As stated in 3 Bogert, *Trusts and Trustees,* part 2, section 742, page 571, "Something in the nature of an emergency is required to move the court to authorize a deviation from the settlor's plan of administration * * *" as quoted in *Hawaiian Trust et als.* v. *Gonser et als.,* 40 Haw. 245, 253.

See also 2 Scott, *Trusts,* sections 167 and 190.4, as to when a court of equity may order a deviation from the terms of a will and order the sale of property in order to avoid the destruction of the trust.

In the annotation in 77 A. L. R. 963, 971, to the case of *Young et al., Trustees, etc.,* v. *Young et al. and Iosco Land Company,* 255 Mich. 173, 237 N. W. 535, holding that a court of equity has power to authorize the sale of property contrary to the provisions of the trust where desirable for the preservation of the trust estate or the protection of the rights of the beneficiaries, the following statement is made in the note:

"As in the reported case (YOUNG v. YOUNG, ante, 963) most of the few courts whose duty it has been to construe trust instruments containing a specific prohibition of sale take the view that the inherent powers of a court of equity to handle and direct the management of trust estates, in accordance with the wishes of the testator and in the interest of the beneficiaries, are not stilled and left impotent by an absolute prohibition of alienation. When exigencies arise which leave, as the only alternative to a sale, the impoverishment of the beneficiaries for whom it was meant to

provide and the diminution or total loss of the corpus of a valuable estate, the rule becomes one of reason flavored with the logic that the preservation of the estate unsold under such circumstances or conditions is in itself a perversion of the testator's or settlor's predominant intent to provide maintenance for certain cestuis, and the devolution of the corpus to them or others."

Appellees do not dispute this doctrine of deviation but claim that there is no intent of the testator, expressed or implied, to give the trustees power to sell the residence. They further assert that where property is sold by reason of the chancellor permitting a deviation to prevent destruction of the corpus or the failure of testator's intent, the proceeds of the sale are impressed with the same trust— that the rights of the remaining beneficiaries cannot be lessened by the sale of the corpus—and that, therefore, only the income from the investment of the proceeds of the sale can be paid to the mother and to the maid for sustenance.

On the other hand, the appellants claim that the payment of the monthly and other cash payments to or for the benefit and maintenance of the life beneficiaries out of the proceeds of the sale of the residence would be in conformity with the cardinal purpose and the primary intent and scheme of the testator even though not expressly authorized, and further claim that the trustees are expressly authorized to use the proceeds from the sale of the residence to make payments of the monthly allowances and the other cash requirements provided for the care of the mother and the maid.

In ascertaining the question as to what disposition should be made of the proceeds of the sale of the residence, that is, whether the specified monthly payments should continue to be made out of the principal should the income

be inadequate, the dominant or primary intent that is gathered from all the provisions of the will must control and, where doubtful, favor must be accorded to those beneficiaries who appear to be the special objects of the testator's bounty.

In such proceedings, precedents and so-called rules of construction are of little value. The epigram of Sir William Jones that "no will has a brother" has often been quoted by the courts. (57 Am. Jur., *Wills,* § 1123, p. 717.)

"Two wills rarely use exactly the same language. On the contrary, every will is so much a thing of itself, and generally so unlike other wills, that it must be construed by itself as containing its own law * * *. Frequently a very slight change in the verbiage calls for a different construction of two wills much alike in other respects, and when used under different circumstances with different context, the same words may express different intentions." (57 Am. Jur., *Wills,* § 1123, pp. 717, 718.)

Or, as stated in our own case, *Estate of Deering,* 29 Haw. 854, 864-865, quoting 28 R. C. L. 219:

"The primary object of testatrix' bounty, as shown by the will itself, is the Leahi Home, for the benefit of which a trust was created and a residuary devise and bequest was made wherein the trustees were empowered, among other things, to lease all property forming part of said estate. 'In the interpretation of a will the dominant or primary intention, gathered from the whole thereof and all its provisions, must be allowed to control and a particular and minor intent is never permitted to frustrate a general and ulterior object of paramount consideration. Accordingly in interpreting wills favor will be accorded to those beneficiaries who appear to be the special objects of the testator's bounty.' 28 R. C. L. 219 and n. 10."

The primary objects of the testator's bounty were his mother, who had resided with him and been supported by him for many years, and his faithful maid who had served him nineteen years.

It will be noted that no part of the income is to be paid to any beneficiary other than the mother and the maid.

When the will was first drawn it did provide in subparagraph "d" of paragraph "SIXTH" that after payment to his mother and to the maid, the trustees should divide the balance of the net income of his said trust estate between his two sisters-in-law, Portia Ackerman and Mary O'Brien, in equal shares.

However, in a codicil to the will the testator deleted subparagraph "d" of paragraph "SIXTH," made certain changes as to the disposition of the remainder of the estate after the termination of the trust, and made a very significant change in subparagraph "h" of paragraph "SIXTH" by which he provided that in addition all proceeds of the insurance policies are to be held by his trustees "for the purpose of paying the costs and expenses of maintaining my residence and to meet the *other cash requirements* to carry out the foregoing directions," that "all proceeds from the sale of any assets or property which may be from time to time a part of said trust estate are to be held by my Trustees in cash for the purpose of paying the costs and expenses of maintaining my residence and *to meet the other cash requirements to carry out the foregoing directions."* (Emphasis added.) Further, he gives the power to the trustees "to sell at public or private sale" the whole or any part of his property, real, personal or mixed.

When the residence is sold, it ceases to be a residence and the necessity for its maintenance ceases and the proceeds from its sale are a part of the "trust estate." It would not seem a strained construction to hold that it comes within the provisions of subparagraph "h" of para-

graph "FOURTH" of the codicil providing that any assets or property *which may be from time to time a part of said trust estate* are to be held by my Trustees in cash for the purpose of paying the costs and expenses of maintaining my residence *and to meet the other cash requirements to carry out the foregoing directions."* (Emphasis added.)

It would be strange indeed if the trustee could use the assets for the maintenance of the premises but not for the occupants thereof.

Appellees' contention that the monthly payments of $200 and $150 to the mother and the maid respectively must be paid from income only is based on the phrase "using the income therefor to the extent thereof." This is no clear limitation that such payments should be made from the income only, but it might indicate that the income is to be used as far as it will go and the balance of the stated monthly payments be made out of principal. Had the testator intended to limit such payments to income only he could have used an expression so restricting the monthly payments instead of the ambiguous term that was used. Further, the payment "of all medical, sickness and hospital expenses" were "cash requirements" which the trustees were mandated to meet (1) by the use of the proceeds of the insurance policies and (2) by the use of the proceeds from the sale of "any assets or property which may be from time to time a part of the said trust estate." This would cover capital which from *"time to time"* formed an asset of the trust estate and obviously the proceeds of the sale of the residence is at such time an asset of the trust estate.

The contention that the rights of the remaindermen cannot be curtailed by converting the real property into cash begs the question. If the trustees are authorized to use any of the assets or property which may be from *time to time* a part of the trust estate, the remaindermen are

entitled only to what is left at the time of the termination of the trust; it will be noted that the trust terminates upon the death of the two life tenants and the trustees are required to convert the assets into cash and only then are the rights of the remaindermen vested.

If the income was insufficient to meet the requirements for the support of the life beneficiaries and the proceeds of the insurance policies had been exhausted, the proceeds from the sale of any assets, including the residence, were by the codicil still available to the trustees to meet the "cash requirements" for the support of the mother and the maid. The codicil was the latest expression of the testator's general intent and if there is any apparent conflict between the specific provisions of the will as to the sale of the residence and the general intent to care for the two life beneficiaries adequately, then the general intent should control. The proceeds of the residence, if sold, should be held available to meet the cash requirements, particularly of subparagraphs "(a)" and "(b)."

As we have stated, it is not of much value to cite authorities as the same words may under different circumstances be differently interpreted and a slight change in the wording may bring a very different construction. However, *In re Emerson's Estate,* 139 Cal. App. 571, 34 P. (2d) 800, 802, contains the following statement of the court which seems very appropriate to the instant case:

"[1-3] In the construction of wills, the intention of the testator controls, and, as it is admitted, citation of authority is seldom useful, as the intent of a testator is to be ascertained from the will itself. It is perfectly manifest from a reading of the will and codicil that it was the main and primary concern of the testatrix to take care of the two annuitants during their respective lives. The share of the remaindermen was postponed until the annuitants had been cared for during their

lives. It is clear from a reading of the will and codicil that the testatrix was more solicitous about the welfare of the two annuitants than she was of the remaindermen. Her intent in this connection is plainly indicated by the terms of the codicil, for her executors were directed to pay such annuitants the amounts provided, during the probate of her estate, for their maintenance and support. There is no provision for the enjoyment of the corpus by the remaindermen until after both these preferred annuitants are dead. In short, the entire instrument shows conclusively the intent of the testatrix was that the annuitants should be maintained and supported, regardless of the source from which the funds for that purpose should come. There was no intent indicated to keep the corpus intact for the remaindermen. * * *"

Reversed and remanded with direction to the chancellor to instruct the trustee that the monthly payments to the life beneficiaries should continue out of the principal if the income is inadequate; further, medical, sickness and hospital expenses and funeral expenses of the mother should be paid from the corpus if the income is inadequate. No direction regarding the sale of real estate is necessary in view of its sale, during the pendency of appeal, pursuant to the order of this court.

*Pratt, Tavares & Cassidy* for guardian ad litem, respondent-appellant *Willard Buscher.*

*Suyeki Okumura* for *Kishino Oda,* respondent-appellant.

*Smith, Wild, Beebe & Cades* for Hawaiian Trust Company, Limited, Trustee.

*Shiro Kashiwa,* guardian ad litem for *Harry Buscher, Ward Buscher, Carole Ackerman, Diana Ewing, Sharon Marie Groom, Howard J. Groom* and *Sheila Margaret Groom,* minors and remaindermen.